IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLINA SURMAN, and<br>STEPHEN SURMAN, H/W, ) ) ) | CIVIL ACTION NO. 3:19-216 |
| Plaintiffs, ) ) ) | JUDGE KIM R. GIBSON |
| v. ) ) | |
| ROBERT PAYNE, and<br>DOT TRANSPORTATION, INC., ) ) ) | |
| Defendants/Third-Party<br>Plaintiffs, ) ) ) | |
| v. ) ) | |
| STEPHEN SURMAN, ) ) | |
| Third-Party Defendant. ) | |

## MEMORANDUM OPINION

Pending before the Court is Third-Party Defendant Stephen Surman's ("Surman") Motion for Summary Judgment (ECF No. 41) on Third-Party Plaintiffs Robert Payne ("Payne") and DOT Transportation, Inc.'s ("DOT") negligence claim arising out of an automobile accident. The issues have been fully briefed (ECF Nos. 41, 42, 43, 44, 46), and the motion is ripe for disposition. For the reasons that follow, the Court **DENIES** the motion.

**I. Jurisdiction**

The Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332.[1] Venue is proper because a substantial part of the events giving rise to the claims in this case occurred in the Western District of Pennsylvania. 28 U.S.C. § 1391(b)(2).

**II. Procedural History**

On October 9, 2019, Nicholina Surman and Stephen Surman filed a Complaint against Payne and DOT in the United States District Court for the Eastern District of Pennsylvania. (ECF No. 1). On December 6, 2019, the parties submitted a joint stipulation to transfer the case

---

[1] The Court notes that it may raise the issue of subject-matter jurisdiction on its own initiative at any stage in the litigation. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (explaining that the "objection that a federal court lacks subject-matter jurisdiction … may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment."). The Court further notes that for a natural person, domicile, not residence, determines citizenship. *GBForefront, L.P. v. Forefront Management Group, LLC,* 888 F.3d 29, 34 (3d Cir. 2018). Finally, a corporation is a citizen of its state of incorporation and the state of its principal place of business. *Id.*

Here, the parties allege the following with respect to citizenship: (1) Nicholina and Stephen Surman were citizens of New Jersey (*See* ECF No. 17 at ¶ 1, 4; ECF No. 35 at ¶ 3); (2) Payne was a resident of Maryland (ECF No. 17 at ¶ 2; ECF No. 35 at ¶ 1); and (3) DOT had its corporate address in Illinois (ECF No. 17 at ¶ 3; ECF No. 35 at ¶ 2). Therefore, because the parties have only provided the Court with information regarding Payne's residence and what appears to be the address of DOT's principal place of business, the parties' assertions regarding citizenship are incomplete.

However, residence and domicile are closely related. *McCann v. Newman Irrevocable Trust,* 458 F.3d 281, 286 (3d Cir. 2008) (explaining that the domicile of an individual is his true, fixed, and permanent home, and further explaining that an individual can change domicile by taking up residence at a new domicile and intending to remain there). And the Court is unaware of any facts that would indicate that Payne was domiciled anywhere other than Maryland. Therefore, the Court will proceed with the understanding that Payne was a citizen of Maryland.

Moreover, the Court has reviewed the Corporation/LLC Search portion of the website maintained by the Office of the Illinois Secretary of State, and it appears that DOT is incorporated in the state of Delaware. Corporation/LLC Search/Certificate of Good Standing, OFFICE OF THE ILLINOIS SECRETARY OF STATE, https://www.ilsos.gov/departments/business_services/corp.html (select "Search;" select "Corporate" and click on "Submit;" enter "DOT Transportation, Inc." into the "Search" bar and click on "Continue;" select "DOT Transportation, Inc."). Therefore, the Court will proceed with the understanding that DOT was a citizen of Illinois and Delaware. Accordingly, it appears that there is diversity between the parties, and the Court will proceed to consider the merits of Surman's motion.

to the Western District of Pennsylvania. (ECF No. 7). On December 10, 2019, Judge DuBois ordered that the case be transferred to the Western District. (ECF No. 9). This Court received the case on December 18, 2019. (ECF No. 10).

On December 19, 2019, Payne and DOT filed a Motion for Partial Dismissal of the Surmans's Complaint under Rule 12(b)(6) and for a More Definitive Statement under Rule 12(e). (ECF No. 12). Because the Surmans filed an Amended Complaint on January 10, 2020, (ECF No. 17), this Court denied DOT and Payne's motion as moot. (ECF No. 18). In their Amended Complaint, the Surmans brought the following three claims against Payne and DOT: Negligence (Count I), Respondeat Superior (Count II), and Loss of Consortium (Count III). (ECF No. 17 at 3–6).

On March 25, 2020, Payne and DOT filed a motion asking this Court to sever Nicholina Surman and Stephen Surman's claims, and then to allow Payne and DOT to file a Third-Party Complaint joining Stephen Surman as a Third-Party Defendant. (ECF No. 31 at 1). Payne and DOT explained that the Surmans were in a motor vehicle accident with Payne. (*Id.* at 2). Payne and DOT further stated that at the time of the accident, Stephen Surman was driving the vehicle in which he and Nicholina were riding, and Nicholina was in the passenger seat. (*Id.* at 3). Payne and DOT alleged that Stephen Surman acted negligently at the time of the accident, and that his actions caused or contributed to the accident. (*Id.*). Accordingly, Payne and DOT asked this Court to allow them to bring an action against Stephen Surman for contribution or indemnification. (*Id.* at 4). On April 23, 2020, the Court granted Payne and DOT's motion, severed the claims of Nicholina and Stephen Surman, and granted Payne and DOT leave to file a Third-Party Complaint against Stephen Surman. (ECF No. 34).

On April 29, 2020, Payne and DOT filed a Third-Party Complaint against Stephen Surman. (ECF No. 35). The Third-Party Complaint contained a single count—Negligence. (*Id.* at 3). Specifically, Payne and DOT alleged that Surman was negligent in his operation of the vehicle at the time of the accident, and that as a result of his negligence, he is at least partially liable for any harm that Nicholina Surman suffered. (*Id.* at 3–4).

On December 15, 2020, Stephen Surman filed a Motion for Summary Judgment and Brief in Support (ECF No. 41), asking this Court to dismiss Payne and DOT's negligence claim against him. (*Id.* at 9). On January 13, 2021, Payne and DOT filed a Response in Opposition (ECF No. 42), and a Brief in Opposition. (ECF No. 43). On January 25, 2021, Surman filed a Reply Brief. (ECF No. 44). Finally, on February 3, 2021, Payne and DOT filed a Sur-reply. (ECF No. 46).

### III. Factual Background[2]

#### a. The Accident [3]

This suit stems from a motor vehicle accident that occurred on October 23, 2017. (ECF No. 41 at ¶ 1; ECF No. 42 at ¶ 1). On that date, at approximately 11:36 a.m., Surman was traveling in the left lane of Interstate Route 70 ("I-70") in Somerset Township, Washington County, PA. (ECF No. 41 at ¶ 2; ECF No. 42 at ¶ 2). At about the same time and place, Payne, acting on behalf of his employer, DOT, (ECF No. 17 at ¶ 9; ECF No. 21 at ¶ 9), was driving a tractor trailer in the right lane of I-70. (ECF No. 41 at ¶ 5; ECF No. 42 at ¶ 5). Due to

---

[2] The Court derives the facts in the following section from a combination of: (1) Surman's Motion for Summary Judgment (ECF No. 41), (2) Payne and DOT's Response in Opposition (ECF No. 42), and (3) the exhibits that the parties have attached to their submissions to the Court. (ECF Nos. 41, 42). For purposes of background, the Court derives the fact that Payne was acting on behalf of DOT at the time of the accident, a fact upon which the parties agree, from the Surmans's Amended Complaint and Payne and DOT's Answer thereto. *See infra* Section III.a.

[3] Unless otherwise noted, the parties agree on the facts in this subsection.

construction, the vehicles in the right lane were required to merge into the left lane. (ECF No. 41 at ¶ 3; ECF No. 42 at ¶ 3). Accordingly, as Payne and Surman approached the location where the right lane ended (the "merge point"), Payne merged into the left lane, and his vehicle and Surman's vehicle collided. (ECF No. 41 at ¶ 4–6; ECF No. 42 at ¶ 4–6).

The parties disagree over (1) exactly how the accident occurred, (2) whether Surman sped up whenever Payne began to merge, and (3) where the vehicles first made contact, among other things. (*See* ECF Nos. 41, 42). Generally speaking, Payne contends that (1) the left lane was clear when he began to merge, (2) Surman accelerated as Payne began to move into the left lane, and (3) Surman made contact with the rear portion of Payne's trailer. (ECF No. 42 at 2–3). For his part, Surman argues that (1) Payne went flying past him, (2) he never sped up in an effort to get past Payne, and (3) the front part of Payne's trailer struck his vehicle. (ECF No. 41 at 3–4).

b. **Deposition Testimony of Stephen Surman**

Surman testified that on the day of the accident, he was traveling eastbound on I-70. (ECF No. 41, Exhibit B, at 19:10–15). Surman stated that for a period of time before the accident occurred, he saw warning signs indicating that there was construction ahead and that the right lane would be closed. (*Id.* at 19:16–24). According to Surman, he was traveling about 40 miles per hour prior to the accident. (*Id.* at 20:23–21:5).

As he approached the point at which the right lane ended, Surman's "eyes were straight ahead on the road to make sure" that there was nothing in front of him given "the amount of construction going on." (*Id.* at 24:7–14). Surman stated that "everybody else in the right lane had already merged over," so there "wasn't any reason to be concerned about any truck behind [him]." (*Id.* at 24:11–14).

5

Surman further alleged that at some point in time:

> This guy [Payne] went flying by me at—I can only guess the speed limit. It was more than 45 miles an hour. So he went flying by me at an excessive speed and it wasn't the rear of his truck that hit us. He started hitting us towards the front of the truck . . . [t]his guy just plowed right into us at an excessive rate of speed, came out of nowhere. He wasn't next to me. He passed me on the right side when I was in the right-of-way lane.

(*Id.* at 22:8–19). According to Surman, Payne "probably did not have a turn signal on because [Surman] did not see" one. (*Id.* at 47:24–48:3). Surman testified that he did not speed up in an effort to get through the merge point before Payne. (*Id.* at 27:25–28:5).

c.  **Deposition Testimony of Robert Payne**

Payne testified that he activated his turn signal "miles" before the accident involving his vehicle and Surman's vehicle. (ECF No. 42-1 at 33:17–20). Payne stated that he traveled at a constant 45 miles per hour, the posted speed limit, during the two-mile stretch leading up to the point of the accident. (*Id.* at 33:8–25). Payne further stated that he had no choice but to wait until the last second to merge from the right lane into the left lane. (*Id.* at 34:25–35:4).

According to Payne, at the time he merged into the left lane, he looked in three of his mirrors and determined that he "had the clearance to get in the other lane." (*Id.* at 36:18–37:8). Specifically, Payne stated that the Surmans's vehicle was approximately 10 feet behind him. (*Id.* at 78:17–24).[4] Payne further alleged that Surman sped up at the time of the accident. (*Id.* at 63:21–23). Payne stated that he was "maintaining 45 miles an hour and had room to get over and there was plenty of room to get over and [Surman] ended up beside my trailer as I was already making the merge. He had to have sped up." (*Id.* at 63:25–64:4).

---

[4] In his answer to the Surmans's interrogatory, Payne stated that he recalled "seeing the [Surmans's] vehicle prior to the accident, approximately 10 feet behind the tractor trailer." (ECF No. 42-1, "Defendants' Answers to Plaintiffs' Interrogatories," at 6). Payne further alleged that Surman was traveling approximately 55 to 60 miles per hour at the time of the accident. (*Id.*).

Payne testified that his tractor was completely in the lane left at the time of the accident, with the trailer following. (*Id.* at 48:4–12). Payne alleged that the front of the Surman vehicle hit the "wheel well of the tandems" on the trailer, (*id.* at 43:21–44:2), and that there was damage to the wheels on the driver's side of the trailer. (*Id.* at 42:21–24).

d. **Deposition of Corporal Scott Abbott**

Corporal (Trooper at the time of the accident) Scott Abbott ("Corporal Abbott") of the Pennsylvania State Police testified that he responded to the accident between Payne and Surman, and that he was the only Trooper at the scene. (ECF No. 42-6 at 6:4–8:11, 37:7–8). Because Corporal Abbott did not witness the accident, he reviewed the physical evidence and the statements of Payne, the Surmans, and the independent witness. (*Id.* at 38:3–43:4). Based on the information he gathered, Corporal Abbott issued three citations to Payne. (*Id.* at 39–42). The first citation was for "fail[ing] to obey the instructions of an applicable official traffic control device." (*Id.* at 39:1–8). The second citation was for "enter[ing] a lane that was already occupied." (40:15–41:1). The final citation was for "turn[ing] or chang[ing] lanes without safely [sic] or without signalling [sic]," and, basically, "fail[ing] to do a safe lane change, which resulted in a crash." (*Id.* at 42:11–18). Corporal Abbott stated that there was no reason why Payne could not have slowed down in an effort to get into the left lane safely or stopped and waited for traffic to clear before getting over. (*Id.* at 53:8–19).

e. **Deposition of Matthew Miklic**

Matthew Miklic, an individual working near the accident site, was the independent witness who provided a statement to Corporal Abbott. (ECF No. 42-4 at 13:12–14:15, 20:7–9). Miklic stated that he did not actually see the initial contact between the two vehicles. (*Id.* at

7

27:15–17). Miklic further testified that after he heard a noise and turned around, he saw the truck "in the middle of the two lanes, trying to go from the slow lane to the fast lane—to the passing lane." (*Id.* at 28:20–29:1). When the truck was in the middle of the two lanes, it "already had contacted [sic] the van." (*Id.* at 29:2–6). Miklic stated that "when [he] first turned around, [he] want[ed] to say the van was, like, at the rear end of the actual tractor of the tractor trailer. Between there and the front of the actual trailer itself." (*Id.* at 43:10–14).

   f. Daniel Connolly's report

Payne and DOT retained an accident reconstructionist, Daniel Connolly, to provide an analysis of the accident. (ECF No. 43 at 6). In preparing his report, Connolly reviewed the drive-cam from the vehicle that Payne was operating at the time of the accident. (ECF No. 42-3 at 5). Based on that video, Connolly stated that when Payne started to merge into the left lane, the front left mirror of his vehicle showed that the left lane was clear. (*Id.*). According to Connolly, once Payne's vehicle was approximately halfway into the left lane and 40 feet from the merge point, a "dark shadow appear[ed] in the left front mirror." (*Id.* at 6). Connolly relayed that the video showed "the dark shadow in the left front mirror fill[ing] up the mirror" at the point when the "tractor [was] fully within the left lane and the trailer and mini-van [were] making contact." (*Id.*).

Connolly also reviewed a picture of the damage to the "left rear #4 axle outboard tire and rim" of Payne's trailer. (*Id.* at 7). According to Connolly, the damage "is associated with the wheel being struck which displaced the rim inward . . . [t]his damage is not caused by a sideswipe type crash . . . [t]his physical evidence confirms that the initial contact to the trailer was made by the Dodge Caravan and not the result of a side-swipe." (*Id.*). In sum, Connolly

8

provided the following opinion: "[b]ased on the physical evidence observed on both the trailer and Dodge Caravan, it confirms that the Dodge impacted the left rear corner of the trailer and left rear tandem as it was merging." (*Id.* at 11).

### g. Payne Pleads Guilty to a Citation

Payne testified that he received three citations by mail following the accident, (ECF No. 42-1 at 49:15–17), and he eventually pled guilty to one of the three citations. (*Id.* at 51:3–5). Payne's testimony was that he pled guilty to that citation "because [he] was annoyed. [He] didn't want to be there. [He] just wanted to get it over with, pay the fine, and put it behind [him]." (*Id.* at 51:15–20).

Payne and DOT submitted a "PA Traffic Officer's Copy" of the citation to which Payne pled guilty. (ECF No. 42-1, "PA Traffic Officer's Copy"). The citation was for violating Section 33091(1) of the Pennsylvania Motor Vehicle Code. (*Id.*). The "Remarks" portion of the citation indicates: "[u]pon changing lanes, driver failed to do so safely thus causing a crash . . ." (*Id.*).

### IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the

9

evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (citations omitted). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply, Inc. v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (citation and internal quotation marks omitted)).

## V. Discussion

### a. Parties' Arguments

Surman moves for summary judgment on the ground that the evidence on the record fails to identify any duty or breach of duty on his part. (ECF No. 41 at 16–21). Surman also contends that Payne's guilty plea to the citation could constitute negligence *per se*. (*Id.* at 18–20).

In response, Payne and DOT argue that a jury could find that Payne was properly merging at the time of the accident and that Surman sped up in an effort to pass him. (ECF No. 43 at 11). Payne and DOT argue that a jury could therefore conclude that Surman was negligent and that negligence was a cause of the accident. (*Id.*) Moreover, Payne and DOT submit that even if a jury did find Payne negligent *per se*, the jury could still find that Surman was also negligent and a cause of the accident. (*Id.* at 13–17).

### b. Pennsylvania's Negligence Law

To state a claim for negligence under Pennsylvania law, the plaintiff must allege the following elements: (1) a legal duty; (2) a breach of that duty; (3) a causal relationship between the defendant's negligence and plaintiff's injuries; and (4) damages. *City of Philadelphia v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002); *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998).

With respect to duty, "it is axiomatic in Pennsylvania that every driver owes other drivers a duty of reasonable care." *Cleveland Bros. Equipment Co., Inc. v. Vorobey*, No. 4:19-CV-01708, 2021 WL 120370, at *3 (M.D. Pa. Jan. 13, 2021). Further, although a "driver is not required to anticipate the negligence of another . . . it is as much his duty to use due care to avoid an accident if the driver of the other car is negligent, as it is if the other driver was not negligent." *Heimburger v. Gundy*, 34 A.2d 489, 491 (Pa. 1943); *see also Smith v. Port Authority Transit*, 390 A.2d

249 (Pa Super. Ct. 1978) (implying, in a case involving a motor vehicle accident where the driver of a vehicle in the right lane merged into the left lane and struck a driver in that lane, that if the driver in the left lane "failed to prevent an avoidable accident" or "failed to exercise due care prior to the accident," it would have been appropriate to charge the jury on the driver in the left lane's potential contributory negligence).

To establish the causation element in a negligence claim, the plaintiff must allege that the defendant's breach of his legal duty was both the proximate and actual cause of injury. *Reilly v. Tiergarten Inc.*, 633 A.2d 208, 210 (Pa. Super. Ct. 1993). "Actual causation is present when the alleged injury would not have occurred but for a certain act or presence of a condition . . . while proximate causation requires that the defendant's wrongful act be a substantial factor in bringing about the plaintiff's harm." *Andrews v. Fullington Trail Ways, LLC*, No. 3:15-cv-228, 2016 WL 3748579, at *5 (W.D. Pa. July 8, 2016) (citations and internal quotation marks omitted). Plaintiffs must prove both elements of causation by a preponderance of the evidence. *Hamil v. Bashline*, 392 A.2d 1280, 1284 (Pa. 1978). Whether plaintiffs' burden has been "met with respect to the element of causation is normally a question of fact for the jury; the question is to be removed from the jury's consideration *only where it is clear that reasonable minds could not differ on the issue*." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1163 (Pa. 2010) (alteration in original) (quoting *Hamil*, 392 A.2d at 1284–85).

### c. A Reasonable Jury Could Conclude That Surman Was Negligent and That His Negligence Was a Cause of the Accident

Here, if a jury were to believe Payne's testimony and Connolly's report, it could find the following: as Payne approached the merge point on I-70 on October 23, 2017, he had his turn

signal on, indicating his intent to merge into the left lane. (ECF No. 42-1 at 33:17–20). Further, in preparing to merge, he (1) looked in three of his mirrors, (*id.* at 36:24–37:2), (2) saw that Surman was approximately ten feet behind him, (*id.* at 78:17–24), and (3) only moved into the left lane once he had the clearance to do so. (*Id.* at 36:18–37:8; ECF No. 42-3 at 5–6). However, as Payne began merging, Surman sped up, (ECF No. 42-1 at 63:21–23), perhaps to 55-60 MPH. (ECF No. 42-1, "Defendants' Answers to Plaintiffs' Interrogatories," at 6). Surman did not ultimately make it through the merge point before Payne, but rather collided with the rear left corner of Payne's trailer. (ECF No. 42-3 at 11).

Given these findings, a reasonable jury could conclude that Surman breached his duty of care to Payne by speeding up when Payne entered his lane, taking away Payne's ability to merge safely. Further, especially since Connolly's report indicates that the Surmans's vehicle struck the back end of Payne's trailer, a reasonable jury could conclude that Surman's negligence was an actual cause of the accident. The jury could find that but-for Surman's decision to speed up, he would not have struck the rear end of Payne's trailer, and the accident would not have occurred. The jury could also find that Surman's conduct was a substantial factor in bringing about the accident.

Moreover, assuming for purposes of argument that Payne acted negligently, Surman still owed Payne a duty to use due care to avoid an accident. *Heimburger*, 34 A.2d at 491.[5] Once

---

[5] Surman testified that he believed "the speed limit was 45" at the point where the accident occurred. (ECF No. 45, Exhibit B, 20:23–21:2). If a jury believed Surman with respect to the speed limit, and if the jury also believed Payne's assertion that Surman was traveling 55-60 MPH at the time of the accident, (ECF No. 42-1, "Defendants' Answers to Plaintiffs' Interrogatories," at 6), the fact of Surman's speeding alone could lead a reasonable jury to find that Surman acted negligently and was a cause of the accident. *Smith*, 390 A.2d at 252 (implying that if there had been evidence that the driver in the left lane was

again, because a reasonable jury could find that Surman sped up as Payne began to merge and ultimately struck the back end of Payne's trailer, a reasonable jury could find that Surman breached his duty of due care and was a cause of the accident.[6]

In sum, the Court holds that a reasonable jury could find that Surman breached a duty of care and that his negligence was a cause of the accident. The Court further holds that even if Payne was negligent—whether *per se* or otherwise—such negligence would not bar the jury from also finding that Surman was negligent and that negligence was a cause of the accident.

## VI. Conclusion

For these reasons, the Court denies Surman's Motion for Summary Judgment. In doing so, the Court reiterates that it is neither opining as to the negligence of either party nor making a determination as to the respective liability of either party for the harm caused by the accident.

An appropriate order follows.

---

speeding, a jury instruction on that driver's potential contributory negligence would have been appropriate).

[6] Concerning Surman's arguments regarding negligence *per se*, (ECF No. 41 at 18–20), the Court first notes that it is not now ruling as to the admissibility of Payne's guilty plea. Further, in response to Surman's contentions, the Court notes that Pennsylvania courts "do not give preclusive effect in a civil case to a defendant's prior conviction of a traffic violation," meaning that a jury would have to decide whether Payne did in fact violate Section 3309(1). *Thompson v. Austin,* 272 F. App'x 188, 192 n. 6 (3d Cir. 2008) (citing *Hurtt v. Stirone,* 206 A.2d 624, 627 (Pa. 1965)). Second, assuming that a jury concluded that Payne violated Section 3309(1) and was therefore negligent *per se*, Surman would still need to show that Payne's negligence was a proximate cause of the accident. *Mahan v. Am-Gard, Inc.,* 841 A.2d 1052, 1058 (Pa. Super. Ct. 2003). Finally, just as comparative negligence remains a valid defense to negligence *per se, Willey v. Minnesota Mining & Mfg. Co.,* 755 F.2d 315, 319 (3d Cir. 1985) (citing *Congini v. Portersville Valve Co.,* 470 A.2d 515, 518–19 (Pa. 1983)), so Payne would remain free to assert that Surman was responsible for at least a portion of Nicholina's injuries, even if a jury found Payne negligent *per se*. In short, assuming without deciding that Payne was negligent *per se*, a reasonable jury could still find that Surman was also negligent.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICHOLINA SURMAN, and ) <br> STEPHEN SURMAN, H/W, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> ROBERT PAYNE, and ) <br> DOT TRANSPORTATION, INC., ) <br> ) <br> Defendants/Third-Party ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> STEPHEN SURMAN, ) <br> ) <br> Third-Party Defendant. ) | CIVIL ACTION NO. 3:19-216 <br><br> JUDGE KIM R. GIBSON |

### ORDER

AND NOW, this 22nd day of November, 2021, upon consideration of Third-Party Defendant Stephen Surman's Motion for Summary Judgment (ECF No. 41), and in accordance with the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Motion is **DENIED**.

BY THE COURT:

_Kim R. Gibson_
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

15