IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLINA SURMAN, and           )
STEPHEN SURMAN, H/W,            )        CIVIL ACTION NO. 3:19-216
                                )
          Plaintiffs,           )
                                )        JUDGE KIM R. GIBSON
     v.                         )
                                )
ROBERT PAYNE, and               )
DOT TRANSPORTATION, INC.,       )
                                )
          Defendants/Third-Party )
          Plaintiffs,           )
                                )
     v.                         )
                                )
STEPHEN SURMAN,                 )
                                )
          Third-Party Defendant. )

## MEMORANDUM OPINION

## I.      Introduction

This case stems from a motor vehicle accident that occurred on October 23, 2017. (ECF No.

49 at 4).[1] On that date, Plaintiff Stephen Surman ("Mr. Surman") was driving a vehicle in which

his wife, Plaintiff Nicholina Surman ("Mrs. Surman") (collectively, the "Surmans" or the

"Plaintiffs") was a passenger. (*Id.* at 4–5). At the time of the accident, the Surmans were traveling

in the left lane of Interstate Route 70 ("I-70") in Somerset Township, Washington County,

Pennsylvania. (*Id.* at 4).

---

[1] The Court derives the background information in this section from its Memorandum Opinion and Order resolving Mr. Surman's Motion for Summary Judgment, which sets forth a more extensive description of the factual background of this case. (ECF No. 49).

At about the same time and place, Defendant Robert Payne ("Mr. Payne"), acting on behalf of his employer, DOT Transportation, Inc., ("DOT") (collectively, the "Defendants"), was driving a tractor trailer in the right lane of I-70. (*Id.*). Due to construction, the vehicles in the right lane were required to merge into the left lane. (*Id.* at 4–5). As Mr. Payne and the Surmans approached the location where the right lane ended (the "merge point"), Mr. Payne merged into the left lane, and his vehicle and the Surmans's vehicle collided. (*Id.* at 5).

As this case nears trial, the Surmans continue to advance the following three claims against Mr. Payne and DOT, all of which arise out of the accident: (1) Negligence (Count I), (2) Respondeat Superior (Count II), and (3) Loss of Consortium (Count III). (ECF No. 17 at 3–6). Further, Mr. Payne and DOT advance a claim for Negligence against Mr. Surman, contending that his negligence caused the accident, and that he "alone [is] liable to [Mrs. Surman], or jointly and severally liable or liable over to [the Defendants] for contribution and/or indemnification." (ECF No. 35 at 3–4).[2]

---

[2] The Court notes that the procedural history of this case is somewhat complex. Indeed, on January 10, 2020, the Surmans filed an Amended Complaint, advancing claims for Negligence, Respondeat Superior, and Loss of Consortium against Mr. Payne and DOT. (ECF No. 17). On March 25, 2020, Mr. Payne and DOT filed a motion requesting that the Court: (1) sever Mr. Surman's claims from Mrs. Surman's claims and (2) permit Mr. Payne and DOT to file a Third-Party Complaint against Mr. Surman. (ECF No. 31). On April 23, 2020, the Court granted Mr. Payne and DOT's motion, severing the claims of Mr. Surman from those of Mrs. Surman, and giving Mr. Payne and DOT leave to file a Third-Party Complaint against Mr. Surman. (ECF No. 34). Accordingly, on April 29, 2020, Mr. Payne and DOT filed their Third-Party Complaint against Mr. Surman, asserting a claim for Negligence. (ECF No. 35).

Then, on August 12, 2022, Mr. Payne and DOT filed a motion requesting that the Court consolidate the claims of Mr. Surman with those of Mrs. Surman. (ECF No. 102). Mr. and Mrs. Surman did not oppose that motion. (ECF No. 108). Accordingly, on August 31, 2022, the Court granted the Defendants' motion, ordering that the "claims of [Mr.] Surman and [Mrs.] Surman shall be consolidated for discovery and case management, *nunc pro tunc*, and for Trial." (ECF No. 110).

The Court offers the foregoing background in order to note that for purposes of Mr. Payne and DOT's Negligence claim against Mr. Surman, Mr. Payne and DOT are technically Third-Party Plaintiffs, and Mr.

Pending before the Court are the following nine motions in limine (four of which are accompanied by a supporting brief):

1. Mr. Surman's "Motion to Allow [Mr.] Payne's Motor Vehicle Conviction as Evidence" (ECF Nos. 60, 61);

2. Mr. Surman's "Motion to Exclude the Report and Testimony of Reconstruction Expert Daniel Connolly" (ECF Nos. 65, 66);

3. Mr. Surman's "Motion in Limine to Exclude Reference to [Mr.] Surman's Liability Insurance" (ECF Nos. 67, 68);

4. Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony of [Mrs. Surman's] Medical Bills at Trial" (ECF No. 69);

5. Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony Related to the Repair Estimate/Bill for Damages to [the Surmans's] Vehicle at Trial" (ECF No. 70);

6. Mr. Payne and DOT's "Motion … to Preclude Purported Expert Testimony of Corporal Scott Ryan Abbott" (ECF No. 71);

7. Mr. Payne and DOT's "Motion … to Preclude Evidence From and/or Testimony Related to the PIP File From Liberty Mutual Insurance" (ECF No. 72);

8. Mr. Payne and DOT's "Motion … to Preclude Inadmissible Portions of the Police Accident Report" (ECF No. 73); and

9. Mrs. Surman's "Motion in Limine to Preclude … [Mr.] Payne and DOT Transportation, Inc. From Introducing a Video at the Time of Trial" (ECF Nos. 95, 100).

---

Surman is technically a Third-Party Defendant. However, for simplicity's sake, the Court refers to Mr. and Mrs. Surman as "Plaintiffs" and Mr. Payne and DOT as "Defendants."

The relevant parties have filed Responses (and one Reply) to several of the foregoing motions. (ECF Nos. 77, 78, 79, 80, 86, 103, 104, 105). The time for filing responses has passed, (*see* ECF Nos. 52, 112, 119), and the motions are ripe for disposition.

For the following reasons, the Court:

1. **GRANTS** Mr. Surman's "Motion to Allow [Mr.] Payne's Motor Vehicle Conviction as Evidence" (ECF No. 60);

2. **DENIES** Mr. Surman's "Motion to Exclude the Report and Testimony of Reconstruction Expert Daniel Connolly" (ECF No. 65);

3. **GRANTS** Mr. Surman's "Motion in Limine to Exclude Reference to [Mr.] Surman's Liability Insurance" (ECF No. 67);

4. **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony of [Mrs. Surman's] Medical Bills at Trial" (ECF No. 69);

5. **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony Related to the Repair Estimate/Bill for Damages to [the Surmans's] Vehicle at Trial" (ECF No. 70);

6. **GRANTS IN PART** and **DENIES IN PART** Mr. Payne and DOT's "Motion … to Preclude Purported Expert Testimony of Corporal Scott Ryan Abbott" (ECF No. 71);

7. **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence From and/or Testimony Related to the PIP File From Liberty Mutual Insurance" (ECF No. 72);

8. **GRANTS IN PART** and **DENIES IN PART** Mr. Payne and DOT's "Motion … to Preclude Inadmissible Portions of the Police Accident Report" (ECF No. 73); and

9. **CONDITIONALLY DENIES** Mrs. Surman's "Motion in Limine to Preclude … [Mr.] Payne and DOT Transportation, Inc. From Introducing a Video at the Time of Trial" (ECF No. 95).

## II.   The Court Grants the Four Unopposed Motions (ECF Nos. 67, 69, 70, 72)

Four of the motions in limine referenced above are unopposed. (ECF Nos. 67, 69, 70, 72). The Court begins its analysis by examining those four motions. Upon doing so, the Court finds that it is appropriate to grant all four.

### A.   The Court Grants Mr. Surman's "Motion in Limine to Exclude Reference to [His] Liability Insurance" (ECF No. 67)

In Mr. Surman's Motion at ECF No. 67, he requests that the Court prohibit any party from referencing either his liability insurance or liability premiums at the upcoming trial. (ECF No. 67 at 2–3). Mr. Surman asserts that under Federal Rule of Evidence 411, "evidence of insurance 'is not admissible to prove whether the person acted negligen[tly] or otherwise wrongfully.'" (*Id.* at 2) (quoting FED. R. EVID. 411). Therefore, he argues that his insurance policy cannot be introduced into evidence in order to "prove or suggest that [he] acted negligently or otherwise wrongfully." (*Id.*). Further, Mr. Surman contends that this case "involves a tractor trailer colliding into a motor vehicle that was already established in its lane." (*Id.*). Accordingly, because any "statements about [Mr. Surman's] insurance policy or insurance premiums do not make it more or less probable that the subject accident occurred[,]" any reference to Mr. Surman's "insurance policy or insurance premiums is irrelevant and should be prohibited at the trial of this lawsuit." (*Id.*).

Federal Rule of Evidence 401 provides that Evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of

consequence in determining the action." FED. R. EVID. 401. Under Rule 402, relevant evidence is admissible unless the: (1) United States Constitution, (2) a federal statute, (3) the Federal Rules of Evidence, or (4) other rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. However, irrelevant "evidence is not admissible." *Id.* Further, Rule 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice ...." FED. R. EVID. 403. Finally, Rule 411 provides that evidence "that a person was or was not insured against liability is not admissible to prove whether the person acted negligently or otherwise wrongfully. But the court may admit this evidence for another purpose, such as proving a witness's bias or prejudice or proving agency, ownership, or control." FED. R. EVID. 411.

Here, under Rule 411, evidence of Mr. Surman's liability insurance is not admissible to prove whether he acted negligently or otherwise wrongfully in this case. *Gradley v. Ellis*, No. 3:13-CV-17, 2015 WL 4412768, at *3 (W.D. Pa. July 17, 2015) ("[E]vidence that Defendant carried liability insurance is not admissible in this case to show that Defendant acted negligently or wrongfully. Thus, any reference to Defendant's liability insurance, whether by testimony or documentary evidence, is inadmissible at trial for that purpose."). Further, Mr. Payne and DOT have offered no argument, and the Court sees no reason, why Mr. Surman's liability insurance has any relevance to this case outside of potentially speaking to whether he acted negligently or otherwise wrongfully.

Finally, even if Mr. Surman's liability insurance or liability premiums were admissible under Rules 401, 402, and 411, the Court would still bar introduction of Mr. Surman's liability insurance and liability premiums because the risk of unfair prejudice from introducing either

piece of evidence at trial substantially outweighs its very low probative value. *Gradley*, 2015 WL 4412768, at *4 ("Here the prejudice to Defendant in allowing Plaintiff to introduce evidence of liability insurance coverage is significant."). Therefore, the Court will not permit any party to introduce evidence of either Mr. Surman's liability insurance or his liability premiums at the upcoming trial in this matter, and the Court will grant Mr. Surman's Motion at ECF No. 67.

**B. The Court Grants Mr. Payne and DOT's Motion in Limine to "Preclude Evidence and/or Testimony of [Mrs. Surman's] Medical Bills at Trial" (ECF No. 69)**

In Mr. Payne and DOT's Motion at ECF No. 69, they ask the Court to preclude reference and/or testimony regarding Mrs. Surman's medical bills at trial. (ECF No. 69 at 1). Mr. Payne and DOT assert that at the time of the accident, Mrs. Surman "was covered by a New Jersey personal automobile policy issued by Liberty Mutual Insurance ("Liberty Mutual") with personal injury protection ("PIP") coverage of $250,000.00." (*Id.*). Further, Mr. Payne and DOT state that Mrs. Surman's "medical treatment was covered and paid for by Liberty Mutual[,]" and the "Liberty Mutual PIP lien was compromised in or about April 2020 on behalf of [Mr. Payne and DOT]." (*Id.* at 2). Therefore, because "Liberty Mutual has already been reimbursed for its PIP lien, those amounts are not relevant to any issue, including damages." (*Id.*). Moreover, Mr. Payne and DOT contend that "any reference to the amount of medical bills paid for by Liberty Mutual would mislead the jury into believing that [that amount] was an element of recoverable damages, when they are not since the lien has been satisfied." (*Id.*).

Here, the Court reiterates that the Surmans have not filed a response to Mr. Payne and DOT's Motion at ECF No. 69. Further, as Mr. Payne and DOT note, (*id.*), in the Surmans's Proposed Jury Instructions, they request that the Court give the jury the following instruction:

"You have heard testimony that [Mrs.] Surman received medical services for the diagnosis and treatment of injuries suffered in the accident. However, *you received no evidence regarding the amount of those medical expenses because those losses are not recoverable damages in this case.*" (ECF No. 58 at 38) (emphasis added). Therefore, it appears that the Surmans agree with Mr. Payne and DOT that evidence of Mrs. Surman's medical bills are not relevant in this case. The Court concurs with the parties' assessment and finds that evidence of Mrs. Surman's medical bills is not relevant to the upcoming trial. FED. R. EVID. 401. Additionally, even if evidence of Mrs. Surman's medical bills was relevant, the Court would find that the very low probative value of that evidence would be substantially outweighed by the risk of misleading the jury into thinking it could award damages based on those medical bills. FED. R. EVID. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Therefore, the Court will bar the Surmans from introducing evidence of Mrs. Surman's medical bills at the upcoming trial, and the Court will grant Mr. Payne and DOT's Motion at ECF No. 69.[3]

---

[3] The Court notes that Mr. Payne and DOT also argue that should the Surmans "be permitted to introduce testimony or evidence of future medical bills, the face amount of the medical bills is not admissible. Rather, only the amount accepted by the healthcare provider as payment in full is compensable and/or admissible." (ECF No. 69 at 2). Based on this contention and the Court's reading of Mr. Payne and DOT's Motion at ECF No. 69, which focuses largely on Mrs. Surman's past medical bills, the Court stresses that in resolving the Motion at ECF No. 69, the Court is excluding all reference to Mrs. Surman's *past* medical bills at the upcoming trial. The Court is not presently ruling on the admissibility of any *future* medical bills.

With that clarifying point in place, the Court makes three notes.

C.      **The Court Grants Mr. Payne and DOT's Motion in Limine to "Preclude Evidence From and/or Testimony Related to the PIP File From Liberty Mutual Insurance" (ECF No. 72)**

In Mr. Payne and DOT's Motion at ECF No. 72, they ask the Court to bar the Surmans from introducing evidence and/or testimony related to the "PIP File from Liberty Mutual

---

First, in Mrs. Surman's Pretrial Narrative, she states that her "damages are non-economic." (ECF No. 53 at 2). Therefore, it appears unlikely to the Court that the Surmans will offer evidence of future medical bills for Mrs. Surman at trial.

Second, in the event that the Surmans do attempt to offer evidence regarding future medical bills at trial, the Court notes that Mr. Payne and DOT cite to the Pennsylvania Supreme Court's decision in *Moorhead v. Crozer Chester Med. Ctr.*, 765 A.2d 786 (Pa. 2001), for the principle that "only the amount accepted by the healthcare provider as payment in full [is] compensable and/or admissible." (ECF No. 69 at 2). However, in that case, the Pennsylvania Supreme Court "solely addressed the issue of the measure of compensatory damages for past medical expenses." *Cleaver v. United States*, No. 08-CV-425, 2012 WL 912729, at *3 (W.D. Pa. Mar. 15, 2012). Indeed, in *Moorhead*, the Pennsylvania Supreme Court held the following:

> When a plaintiff will continue to incur expenses for medical services, it is appropriate for the factfinder to determine the amount of damages which will compensate the plaintiff for those expenses that "are reasonably necessary to be incurred." Conversely, where, as here, the exact amount of expense has been established by contract and those expenses have been satisfied, there is no longer any issue as to the amount of expenses for which the plaintiff will be liable. In the latter case, the injured party should be limited to recovering the amount paid for the medical services.

765 A.2d at 789. Therefore, it is unsurprising to this Court that other courts have "uniformly rejected the application of *Moorhead* as a measure of future medical damages." *Cleaver*, 2012 WL 912729, at *3 (collecting cases). Accordingly, insofar as Mrs. Surman will advance a claim for future medical damages at trial, the Court sets *Moorehead* aside as inapplicable.

Third, the Court turns to what Pennsylvania law has to say about proving future medical bills at trial. "Pennsylvania law provides that a plaintiff seeking to recover future medical expenses must establish, 'by expert testimony, not only that future medical expenses will be incurred, but also the reasonable estimated costs of such services.'" *Good v. FirstEnergy Corp.*, No. 3:13-CV-149, 2016 WL 492804, *6 n.6 (M.D. Pa. Feb. 9, 2016) (quoting *Mendralla v. Weaver Corp.*, 703 A.2d 480, 485 (Pa. Super. Ct. 1997)). Pennsylvania law also offers an exception to this general rule: "when there is a reasonable basis for the jury to conclude that the medical care rendered in the past is the same as the medical care that will be required in the future, the plaintiff can introduce past medical bills in lieu of expert testimony about future costs." *Keifer v. Reinhart Foodservices, LLC*, 563 F. App'x 112, 117 (3d Cir. 2014) (citing *Rogers v. Phila. & Reading Ry. Co.*, 106 A. 734, 736 (1919)). However, because the Court has barred evidence of Mrs. Surman's past medical bills, this exception is not applicable in this case. Therefore, if the Surmans intend to introduce evidence of Mrs. Surman's future medical bills at the upcoming trial, they must present expert testimony indicating the reasonable estimated costs of such services.

Insurance" at trial. (ECF No. 72 at 1). Mr. Payne and DOT state that in the Surmans's Pretrial

Narrative Statement, they "identify as an exhibit that may be offered P-44 PIP File from Liberty

Mutual Insurance." (*Id.* at 2). Mr. Payne and DOT argue that, for the same reasons they advanced

in their motion regarding Mrs. Surman's medical bills, "those portions of the PIP File from Liberty

Mutual should not be permitted as an exhibit during trial." (*Id.*). Finally, Mr. Payne and DOT

contend that the entire PIP File should be precluded because no witness has been identified to

authenticate it, and because the file constitutes inadmissible hearsay. (*Id.*).

In resolving this Motion, the Court notes that the Surmans have neither filed a Response

in Opposition to this Motion nor provided the Court with the PIP File. (ECF Nos. 53, 55, 56).

Therefore, the Court accepts Mr. Payne and DOT's implicit assertion that the PIP File contains

evidence of medical bills that the Court has already barred from introduction at trial, *see supra*

Section II.B, and the Court bars the evidence in the PIP File containing those medical bills for the

same reasons outlined above. Further, to the extent that the PIP File contains additional materials,

the Court cannot examine the file to determine whether those materials are relevant, whether

they survive Rule 403 balancing, or whether they constitute inadmissible hearsay. Therefore, the

Court will preclude the Surmans from introducing evidence and/or testimony related to the PIP

file from Liberty Mutual Insurance at trial, and the Court will grant Mr. Payne and DOT's Motion

at ECF No. 72.

### D.      The Court Grants Mr. Payne and DOT's Motion in Limine to "Preclude Evidence and/or Testimony Related to the Repair Estimate/Bill for Damages to [the Surmans's] Vehicle at Trial" (ECF No. 70)

In Mr. Payne and DOT's Motion at ECF No. 70, they ask the Court to preclude the Surmans

from introducing evidence and/or testimony at trial related to the repair estimate/bill for damages

to the Surmans's vehicle. (ECF No. 70 at 1). Generally speaking, Mr. Payne and DOT contend that the repair estimate/bill: (1) is not relevant to any issue in the case and (2) would only serve to confuse the issues and mislead the jury. (*Id.* at 2).

In resolving this Motion, the Court notes that the Surmans have not advanced a claim for the cost of the repairs to their vehicle, either in their Amended Complaint or their Pretrial Statements. (ECF Nos. 17, 53, 55, 56). Therefore, the Court finds that evidence of the repair estimate/bill is not relevant to the issue of damages in this case. Further, the Surmans have advanced no argument, and the Court sees no reason, why the repair estimate/bill is relevant to the issue of liability in this case. Finally, even if the repair estimate/bill was relevant to any issue in this case, the Court would still exclude it under Rule 403 because its extremely low probative value would be substantially outweighed by the risk of misleading the jury into believing that the repair estimate/bill constitutes a basis upon which to award the Surmans compensatory damages in this case.

Therefore, the Court will bar the Surmans from introducing evidence and/or testimony at trial related to the repair estimate/bill for the damages to their vehicle, and the Court will grant the Motion at ECF No. 70.

### III.  The Court: Grants the Motion at ECF No. 60; Grants in Part and Denies in Part the Motion at ECF No. 71; and Grants in Part and Denies in Part the Motion at ECF No. 73

Following the accident between the Surmans and Mr. Payne, Corporal Scott Abbot ("Corporal Abbot") of the Pennsylvania State Police responded to the scene of the crash. (ECF

No. 49 at 7).[4] Because Corporal Abbott did not witness the accident, he reviewed the physical evidence and the statements of Mr. Payne, the Surmans, and an independent witness. (*Id.*). Based on the information that he gathered, Corporal Abbott issued three citations to Mr. Payne. (*Id.*).

These and other actions by Corporal Abbott provide much of the background information for the motions in limine at ECF Nos. 60, 71, and 73. The Court now examines and resolves those three motions in turn.

### A.     The Court Grants Mr. Surman's "Motion to Allow [Mr.] Payne's Motor Vehicle Conviction as Evidence" (ECF No. 60)

For reasons that the Court outlines below, the Court grants Mr. Surman's Motion at ECF No. 60.

#### 1.   Mr. Payne's Motor Vehicle Conviction

At his deposition, Mr. Payne testified that he received three citations by mail following the accident. (ECF No. 60-1 at 49:12–16). Further, he stated that he pleaded guilty to one of the three citations—the one that read "[u]pon changing lanes, driver failed to do so safely, thus causing a crash." (*Id.* at 68:3–21). Indeed, the citation to which Mr. Payne pleaded guilty was issued for his purported violation of 75 Pa.C.S. § 3309(1) (the "Section 3309(1) citation"). (ECF No. 80 at 1). While Mr. Payne acknowledges that he pleaded guilty to this citation, he denies the suggestion that in doing so, he admitted to causing the crash. (ECF No. 42-1 at 71:8–13). Mr. Payne testified that he pleaded guilty to the Section 3309(1) citation and paid the resulting fine because

---

[4] The Court notes that the information in this paragraph comes from Corporal Abbott's deposition testimony. (ECF No. 49 at 7). Accordingly, the Court does not take the assertions in this paragraph as established facts, and the Court stresses that it only relays this information in order to provide background that pertains to certain of the pending motions in limine.

he "was annoyed. [He] didn't want to be there. [He] just wanted to get it over with, pay the fine, and put it behind me." (*Id.* at 51:10–20).

It is this guilty plea by Mr. Payne that is the subject of Mr. Surman's Motion at ECF No. 60.

### 2. The Parties' Arguments

In Mr. Surman's Motion at ECF No. 60, he requests that the Court allow Mr. Payne's vehicle conviction to be entered into evidence at trial. (ECF No. 60 at 7). In his Brief in Support of his Motion, Mr. Surman contends that Mr. Payne's vehicle conviction is admissible as either a statement against interest or an admission of a party opponent, or both. (ECF No. 61 at 4–5). Further, Mr. Surman cites to caselaw in which courts have found that: (1) guilty pleas to traffic citations have high probative value and (2) the risk of unfair prejudice can be eliminated by allowing the individual who pleaded guilty to the citation to explain why he or she entered the guilty plea. (*Id.* at 5–7) (citing *Allen v. Fletcher*, No. 3:07-CV-722, 2009 WL 3103828 (M.D. Pa. Sept. 24, 2009); *Malantonio v. Boyle*, No. 15-CV-6444, 2017 WL 633997 (E.D. Pa. Feb. 16, 2017)). Similarly, Mr. Surman argues that in this case, Mr. Payne's guilty plea is "highly probative on the question of whether [Mr.] Payne caused the accident, and also, there would be no unfair prejudice in admitting this guilty plea." (*Id.* at 7).

In response, Mr. Payne and DOT first note that the Pennsylvania legislature has passed 42 Pa.C.S. Section 6142(a), which provides that any plea "by 'any person charged with violation of Title 75 (relating to vehicles) shall not be admissible as evidence in any civil matter arising out of the same violation or under the same facts or circumstances.'" (ECF No. 80 at 2) (quoting 42 Pa.C.S. §6142(a)). In a related vein, Mr. Payne and DOT assert that because "it is well recognized

that persons charged with minor traffic citations often will plead guilty and pay a fine not because they feel they are guilty, but for other reasons, a guilty plea for a summary traffic violation does not make it more or less probable that the person is liable for an accident." (*Id.*). Further, Mr. Payne and DOT contend that any "perceived relevancy from the guilty plea is substantially outweighed by the danger of unfair prejudice, confusing the issues and misleading the jury. Such evidence is inadmissible pursuant to Fed. R. Evid. 403." (*Id.* at 2–3) (citing *Compton v. Schweikhard*, No. 3:06-CV-78, 2007 WL 9761634, at *5 (M.D. Pa. Oct. 12, 2017)).

Finally, even if the Court permits the jury to hear of Mr. Payne's guilty plea, Mr. Payne and DOT "request that the actual guilty plea, which contains 'Remarks' by Corporal Abbott, as to causation, not be admitted into evidence or submitted to the jury, or if it is, that the 'Remarks' be redacted." (*Id.* at 5). Specifically, Mr. Payne and DOT request that the Court not permit the jury to see the "Remarks" portion that reads "[u]pon changing lanes, driver failed to do so safely thus causing a crash." (ECF No. 79 at 3–4).

### 3. Legal Standard

At the outset, the Court notes that "federal law rather than Pennsylvania law governs" the issue of whether a traffic citation to which an individual pleaded guilty is admissible in federal court. *Coldsmith v. Agency Ins. Co.*, 556 F. Supp. 3d 445, 453 (M.D. Pa. 2021) (citing *Shelton v. Gure*, No. 3:19-CV-00843, 2021 WL 2210989, at *7 (M.D. Pa. June 1, 2021)); *see also Salas by Salas v. Wang*, 846 F.2d 897, 904 (3d Cir. 1988) ("[I]f the [evidentiary] rules [between federal and state courts]

conflict we must apply the federal rules so long as they are 'rationally capable of classification' as procedural."); *Rain v. Pavkov*, 357 F.2d 506 (3d Cir. 1966).[5]

Under the Federal Rules of Evidence, a court considering the admissibility of a guilty plea to a traffic citation must "ask if the evidence is: (1) inadmissible hearsay, and (2) inadmissible under the balancing test of Federal Rule of Evidence 403." *Coldsmith*, 556 F. Supp. 3d at 453.

With respect to the issue of hearsay, there is precedent indicating that: (1) a guilty plea to a traffic citation can fall under hearsay exceptions, such as statements against interest and (2) evidence of a guilty plea to a citation is admissible as an admission of a party opponent and therefore not hearsay. *Malantonio v. Boyle*, No. 15-CV-64444, 2017 WL 633997, at *1 (E.D. Pa. Feb. 16, 2017); *see also Rain*, 357 F.2d at 509 ("It is the general rule that a plea of guilty to a charge of reckless driving is an admission against interest, and evidence thereof is admissible in an action for personal injuries based upon the same facts and circumstances from which the charge arose."); *Allan v. Fletcher*, No. 3:07-CV-722, 2009 WL 3103828, at *2 (E.D. Pa. Sept. 24, 2009) ("I … find that the guilty plea [by the Defendant to a traffic citation] is an admission of a party opponent and

---

[5] By way of further explanation, the Court reiterates that Mr. Payne and DOT cite to 42 PA. CONS. STAT. Section 6142(a) to demonstrate that Pennsylvania courts generally bar "guilty pleas for summary traffic offenses[.]" (ECF No. 80 at 2). The Court notes that this provision falls under a Chapter of Pennsylvania law dealing with Rules of Evidence—specifically, "Chapter 61. Rules of Evidence." 42 PA. CONS. STAT. § 6142(a).

As the Court noted above, when "the [evidentiary] rules [between federal and state courts] conflict[,]" federal courts "must apply the federal rules so long as they are 'rationally capable of classification' as procedural." *Salas*, 846 F.2d at 904. And the Federal Rules of Evidence "are largely procedural." *Id.* at 906.

Therefore, because the Pennsylvania statute to which Mr. Payne and DOT cite is an evidentiary rule, and because the Federal Rules of Evidence that this Court cites in this subsection are procedural, the Court must apply the Federal Rules of Evidence over the conflicting state rule of evidence cited by Mr. Payne and DOT. When the Court applies the Federal Rules of Evidence, as well as Third Circuit and district court precedent interpreting those rules, the Court finds that it is appropriate to admit evidence of Mr. Payne's guilty plea to the Section 3309(1) citation.

therefore not hearsay."). Further, when an individual receives and pleads guilty to a traffic citation, that citation bears sufficient indicia of trustworthiness and is admissible. *Coldsmith*, 556 F. Supp. 3d at 453; *Shelton*, 2021 WL 2210989, at *7.

With respect to Rule 403, as the Court noted earlier, that Rule provides that the "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. There "is a strong presumption that relevant evidence should be admitted, and thus for exclusion under Rule 403 to be justified, the probative value of evidence must be 'substantially outweighed' by the problems in admitting it. As a result, evidence that is highly probative is exceptionally difficult to exclude." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1343–44 (3d Cir. 2002).

### 4.  **Analysis**

Turning first to the issue of hearsay, the Court finds that Mr. Payne's guilty plea to the Section 3309(1) citation is an admission of a party opponent and therefore not hearsay. *Allen*, 2009 WL 3103828, at *2; FED. R. EVID. 801(d)(2)(A). Further, because Mr. Payne testified that he received the Section 3309(1) citation and pleaded guilty to it, (ECF No. 60-1 at 49:12–16; 68:3–21), the Court finds that it is sufficiently trustworthy to be admitted into evidence at trial. *Coldsmith*, 556 F. Supp. 3d at 453; *Shelton*, 2021 WL 2210989, at *7.

Therefore, the Court turns to the issue of whether Mr. Payne's guilty plea to the Section 3309(1) citation is admissible under Rule 403. The Court finds that the guilty plea's probative value is high because it will help the jury determine what precipitated, and who caused the accident on October 23, 2017.  *Coldsmith*, 556 F. Supp. 3d at 453; *Shelton*, 2021 WL 2210989, at *7;

*Malantonio*, 2017 WL 633997, at *1.[6] Further, the Court will permit Mr. Payne to testify at trial regarding his reasons for pleading guilty to the Section 3309(1) citation, which mitigates the risk of any potential unfair prejudice that he will face from the Court admitting his guilty plea. *Malantonio*, 2017 WL 633997, at *1 ("Since Defendant will have the opportunity to testify regarding the circumstances surrounding his plea to the traffic citation and will be able to explain his actions, we find that the probative value of the evidence outweighs any prejudicial effect of admitting the evidence."). Therefore, the Court finds that the risk of unfair prejudice to Mr. Payne if the Court admits the guilty plea does not substantially outweigh its probative value. *Coleman*, 306 F.3d at 1343–44 ("[E]vidence that is highly probative is exceptionally difficult to exclude."). Accordingly, the Court will permit the Surmans to introduce evidence of Mr. Payne's guilty plea to the Section 3309(1) citation at trial.

In closing, the Court addresses Mr. Payne and DOT's request that the Court bar the Surmans from introducing the "Remarks" portion of the Section 3309(1) citation at trial. (ECF No. 80 at 5). As the Court noted earlier, Mr. Payne and DOT take exception to Corporal Abbott's "Remarks" on the Section 3309(1) citation that "[u]pon changing lanes, [Mr. Payne] failed to do so safely thus causing a crash." (ECF No. 79 at 3). However, for reasons that the Court outlines below, *see infra* Section III.B, the Court finds that the majority of Corporal Abbott's "Police Crash

---

[6] To the extent that Mr. Payne and DOT contend that the guilty plea is irrelevant (ECF No. 80 at 2), the Court finds that they are incorrect. Indeed, the following two facts do make it more probable that Mr. Payne caused the accident on October 23, 2027: (1) the investigating officer in this case, Corporal Abbott, cited Mr. Payne for his actions, and (2) Mr. Payne admitted that he was guilty of violating the Pennsylvania Motor Vehicle Code relative to the accident. Although the Court understands Mr. Payne's contention that his guilty plea was not an admission that he caused the accident, but rather borne out of a desire to see the matter come to a close, the Court finds that an admission of guilt in open court is not easily dispensed with as irrelevant.

Report" (the "Report") from the accident is admissible at trial. In one of the portions of the Report that the Court will admit at trial, Corporal Abbott indicated that Mr. Payne was responsible for "CARELESS PASSING OR LANE CHANGE[,]" and in another admissible portion of the Report, Corporal Abbott stated that Mr. Surman had "NO CONTRIBUTING ACTION" relative to the accident. (ECF No. 73-1 at 1, 3). Therefore, because the Court sees no meaningful distinction between these portions of the Report and the "Remarks" portion of the Section 3309(1) citation, the Court will permit the Surmans to introduce the "Remarks" portion of the Section 3309(1) citation at trial for the same reasons that the Court permits introduction of Corporal Abbott's findings in his Report. *See infra* Section III.B.[7]

Accordingly, the Court will permit the Surmans to introduce evidence of Mr. Payne's guilty plea to the Section 3309(1) citation at trial, and the Court will grant the Motion at ECF No. 60.[8]

---

[7] Indeed, the "Remarks" portion of the citation to which Mr. Payne pleaded guilty appears to be admissible at trial as a public record. FED. R. EVID. 803(8); *see infra* Section III.B. Further, although Mr. Payne asserted in his deposition that he did not plead guilty to causing the crash, (ECF No. 42-1 at 71:8–13), he admits in his Response to Mr. Surman's Motion at ECF No. 60 that the "Remarks" portion of the "PA Traffic Officer's Copy" of the guilty plea read "[u]pon changing lanes, driver failed to do so safely thus causing a crash." (ECF No. 79 at 3). Therefore, the Court has no indication that the "Remarks" portion of the Section 3309(1) citation lacks trustworthiness, and the Court will admit it at trial. Mr. Payne is of course free to explain his understanding of his guilty plea, and it is the jury that must decide how much weight to assign to the "Remarks" portion of the citation to which Mr. Payne pleaded guilty.

[8] In admitting this evidence at trial, the Court reiterates that Pennsylvania courts "do not give preclusive effect in a civil case to a defendant's prior conviction of a traffic violation," meaning that the jury will have to decide whether Mr. Payne did in fact violate Section 3309(1). *Thompson v. Austin*, 272 F. App'x 188, 192 n.6 (3d Cir. 2008) (citing *Hurtt v. Stirone*, 206 A.2d 624, 627 (Pa. 1965)).

**B.** **The Court Grants in Part and Denies in Part Mr. Payne and DOT's Motion in Limine to "Preclude Inadmissible Portions of the Police Accident Report" (ECF No. 73)**

For reasons that the Court explains below, the Court grants in part and denies in part Mr. Payne and DOT's Motion at ECF No. 73.

### 1. Corporal Abbott's Report

As the Court noted above, Corporal Abbott prepared a Report regarding the accident. (ECF No. 73-1). In that document, Corporal Abbott included general information about the parties, such as DOT's insurance company and policy number. (*Id.* at 2). Further, the Report includes a diagram of the accident, Corporal Abbott's conclusions regarding the cause of the accident, and details of the investigation that Corporal Abbott conducted. (*Id.* at 1–6). Finally, the Report lists the three citations that Corporal Abbott issued to Mr. Payne. (*Id.* at 7).

### 2. The Parties Arguments

In Mr. Payne and DOT's Motion at ECF No. 73, they ask the Court to bar the Surmans from introducing the following portions of the Report at trial: (1) the reference to "Defendants' commercial liability insurer[;]" (2) the three citations that Corporal Abbott issued to Mr. Payne; (3) conclusions that Corporal Abbott included in the Report regarding the cause of the accident; and (4) Corporal Abbott's diagram of the accident. (ECF No. 73 at 1–2). Mr. Payne and DOT state that there is "no evidence that [Corporal Abbott] possessed the requisite training or experience to render reconstruction opinions[,]" and that all of the conclusions and opinions that he drew must therefore be excluded from trial. (*Id.* at 2–3).

In response, Mr. Surman states that he "agrees that all reference to liability insurance should be excluded as inadmissible[.]" (ECF No. 78 at 1). However, Mr. Surman argues that the

balance of the Report is admissible as a public record. (*Id.* at 3). Indeed, Mr. Surman asserts that the Report is trustworthy because: (1) Corporal Abbott arrived on the scene shorty after the accident; (2) Corporal Abbott has twenty-two years of experience and has previously investigated many vehicle accidents; and (3) Corporal Abbott has no connection to the parties in this case, and therefore no improper motive. (*Id.* at 4).

### 3. Legal Standard

Hearsay "is a statement, other than the one made by the declarant while testifying at the trial, offered by a party into evidence to prove the truth of the matter asserted, and hearsay is inadmissible unless it falls under an applicable exception." *Prescott v. R&I Transfer, Inc.*, No. 3:11-CV-203, 2015 WL 12564232, at *3 (W.D. Pa. Apr. 21, 2015) (citing FED. R. EVID. 802). Among the "exceptions provided in the Federal Rules of Evidence is the hearsay exception for public

records." *Id.* A public record is "not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness." FED. R. EVID. 803(8).

The public record exception provides the following:

**(8) Public Records.** A record or statement of a public office if:

**(A)** it sets out:

> (i) the office's activities;
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and

**(B)** the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness.

*Id.* (emphasis in original). Thus, Rule 803(8)(A)(iii)[9] "explicitly excepts public records and reports resulting from an investigation made pursuant to authority granted by law, from exclusion under the hearsay rule, because official reports contain inherent indicia of trustworthiness." *Clark v. Clabaugh*, 20 F.3d 1290, 1294 (3d Cir. 1994) (internal quotation marks omitted).

Further, regarding Rule 803(8)(A)(iii), the Supreme Court has held that "portions of investigatory reports otherwise admissible under [Rule 803(8)] are not inadmissible merely because they state a conclusion or opinion. As long as the conclusion is based on a factual investigation and satisfies the Rule's trustworthiness requirement, it should be admissible along with other portions of the report." *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 170 (1988). Additionally, there "is no requirement that a public report admissible under Rule 803(8) must

---

[9] This quote initially referenced Federal Rule of Evidence 803(8)(C), which was a precursor to Rule 803(8)(A)(iii).

also satisfy Rule 702[.]" *McDaniels v. City of Phila.*, 234 F. Supp. 3d 637, 649 (E.D. Pa. 2017) (citing *Clark*, 20 F.3d at 1294) ("Rule 803(8) does not on its face require that the one who undertakes the investigation and authors the report be qualified as an expert before the report becomes admissible[.]").

Finally, in "evaluating the trustworthiness of a public record under Rule 803(8) courts have considered the timeliness of the investigation, the skill or experience of the investigating officers, whether a hearing was held, and the presence of any improper motive." *Prescott*, 2015 WL 12564232, at *3.

### 4. Analysis

At the outset, the Court finds that the reference in the Report to "Defendants' commercial liability insurer" is inadmissible for the reasons that the Court outlined above regarding evidence of Mr. Surman's insurance policy and insurance premiums. *See supra* Section II.A.

Turning to Corporal Abbott's conclusions regarding the cause of the accident and the diagram that he drew of the accident, the Court finds that because Corporal Abbott prepared the Report as the state police officer investigating the accident, (ECF No. 73-1 at 1), the Report plainly constitutes "factual findings from a legally authorized investigation." FED. R. EVID. 803(8)(A)(iii). Therefore, the Report, "including its opinions, conclusions and recommendations," is admissible, "unless [Mr. Payne and DOT] demonstrate its untrustworthiness." *Clark*, 20 F.3d at 1294.

With respect to trustworthiness, Corporal Abbott arrived on the scene and began conducting his investigation approximately thirteen minutes after the accident occurred. (ECF No. 73-1). Further, he testified that at the time he investigated the accident, he had been a police officer for twenty-two years, and he had "investigated multiple crashes and [was] able to

determine how a crash occurs through statements and physical evidence." (ECF No. 71-1 at 44:21–25). Mr. Payne and DOT have not disputed Corporal Abbott's years of service or the fact that he has investigated multiple crashes. (ECF No. 73). Nor have they offered any indication that Corporal Abbott was motivated by an improper purpose in investigating the accident and preparing the Report. (*Id.*). Therefore, because: (1) Corporal Abbott based the Report on an investigation he conducted shortly after the accident, (2) Corporal Abbott had many years of experience working as a police officer and investigating accidents at the time of his investigation, and (3) the Court has no indication that Corporal Abbott conducted his investigation or wrote his Report while operating under an improper motive, the Court easily finds that the Report is trustworthy. *Prescott*, 2015 WL 12564232, at *3 (finding that the police report was trustworthy where the officer preparing the report: (1) arrived on the scene approximately nineteen minutes after the accident occurred, (2) had nineteen years of experience, (3) had investigated many vehicle accidents, and (4) had no connection to the parties). Accordingly, the Court holds that Corporal Abbott's conclusions regarding the cause of the accident, as stated in his Report, as well as the diagram that he drew of the accident, are admissible under Rule 803(8).[10] *Id.* (finding that

---

[10] Given the trustworthiness of the Report, the fact that Corporal Abbott is not an accident reconstructionist and has not been qualified to give expert testimony under Rule 702 has no bearing on this analysis. *Clark*, 20 F.3d at 1295 ("We have held that [b]efore an [objection to the opinion testifier's expert qualifications] may be recognized, … the party challenging the validity of an official report admitted under Rule [803(8)(A)(iii)] must come forward with some evidence which would impugn its trustworthiness.") (internal quotation marks and citation omitted).

the report, which was authored by the Pennsylvania State Police officer investigating the accident, was admissible as a public record).

Finally, the Court turns to the admissibility of the three citations that Corporal Abbott issued to Mr. Payne. In doing so, the Court notes that it has already admitted Mr. Payne's guilty plea to the Section 3309(1) citation. *See supra* Section III.A. Therefore, because the traffic citation itself is part and parcel to the guilty plea, the Court rests on its prior analysis and finds that the Section 3309(1) citation itself is admissible at trial. Accordingly, the Court turns its attention to the citations that Corporal Abbott issued to Mr. Payne for his purported violations of Section 3111a and Section 3334a of the Pennsylvania Motor Vehicle Code. (ECF No. 73-1 at 7).

Mr. Payne and DOT contend that these two citations are inadmissible because the risk of unfair prejudice from their introduction at trial substantially outweighs their probative value. (ECF No. 73 at 2; ECF No. 80). The Court agrees with Mr. Payne and DOT that these two citations are inadmissible under Rule 403.

With respect to probative value, the issuance of a citation alone is "probative of whether [an individual's purportedly] unsafe driving contributed to the accident[.]" *Prescott*, 2015 WL 12564232, at *5. However, the Court also finds that a citation that is fully adjudicated is more probative than one that is not. Indeed, where Mr. Payne pleaded guilty to the Section 3309(1) citation, and thereby (at least purportedly) agreed with the assertion that he violated the law relative to the accident, the two citations to which he did not plead guilty are not as probative because they do not express such apparent agreement on his part. Therefore, the Court finds that

these two citations have some probative value, but that it is not as high as the probative value of the Section 3309(1) citation.

Turning to the risk of unfair prejudice, the Court is concerned that admitting traffic citations to which Mr. Payne did not plead guilty (and which in fact appear to have no apparent disposition) creates a fairly high risk of *unfair* prejudice to Mr. Payne and DOT. *Forrest v. Beloit Corp.*, 424 F.3d 344, 359 n.10 (3d Cir. 2005) ("It is worth stressing that the term 'unfair prejudice' as a factor against which the probative value of evidence is weighed under Rule 403 is often misstated as mere prejudice. Indeed, any evidence that tends to harm a party's case could be said to be prejudicial. Thus, the prejudicial effect of admitting the evidence must rise to the level of creating an unfair advantage for one of the parties for the evidence to be excluded under Rule 403.") (internal quotation marks and citation omitted). Indeed, if the jury is permitted to hear evidence that Mr. Payne was given two citations for purportedly violating the law, it might be inclined to simply deem him a lawbreaker who must have been wholly responsible for the accident on October 23, 2017. In the absence of Mr. Payne pleading guilty to those citations, the Court is not inclined to permit the jury to hear that they were issued.

Relatedly, the Court is concerned that introducing citations to which Mr. Payne did not plead guilty will only confuse the issues in this case by making the jury wonder at why they were issued, as well as their ultimate disposition. *See* FED. R. EVID. 403 ("The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues …."). Therefore, the Court finds that the probative value of these two citations is substantially outweighed by the risk of unfair prejudice

and the risk of confusing the issues. Accordingly, the Court will not permit the Surmans to introduce evidence of the two traffic citations to which Mr. Payne did not plead guilty at trial.[11]

In sum, the Court grants in part and denies in part the Motion at ECF No. 71. Specifically, the Court will bar the Surmans from introducing the following two portions of the Report into evidence at trial: (1) any reference to Defendants' liability insurance and (2) any reference to the two citations to which Mr. Payne did not plead guilty. The Surmans may introduce the balance of the Report at trial.

### C. The Court Grants in Part and Denies in Part Mr. Payne and DOT's Motion in Limine to "Preclude Purported Expert Testimony of Corporal … Abbott" (ECF No. 71)

In their Pretrial Statements, the Surmans indicate their intent to call Corporal Abbott to testify at trial regarding liability and damages. (ECF No. 53 at 4; ECF No. 55 at 3; ECF No. 56 at 3). For the following reasons, the Court grants in part and denies in part the Motion at ECF No. 71 regarding his testimony.

#### 1. The Parties' Arguments

In Mr. Payne and DOT's Motion at ECF No. 71, they request that the Court bar the "[p]urported [e]xpert [t]estimony" of Corporal Abbott at trial. (ECF No. 71 at 1). Mr. Payne and DOT contend that Corporal Abbott is not an expert and should therefore be "precluded from offering any opinions as to fault or the cause of the accident." (*Id.* at 4). Further, Mr. Payne and DOT argue that the Court should not permit Corporal Abbott to offer opinion testimony

---

[11] Unlike these two citations, the conclusions in the Report, such as Mr. Payne engaging in "CARELESS PASSING OR LANE CHANGE" (ECF No. 73-1) are not *unfairly* prejudicial because they do not constitute *undisposed of legal assertions* regarding Mr. Payne's conduct. Moreover, the conclusions in the Report do not run the risk of confusing the issues in this case.

regarding fault or causation because he did not witness the accident, meaning that his testimony would "'usurp the jury's role as factfinder' relating to fault for the accident." (*Id.* at 4–5). Finally, Mr. Payne and DOT assert that the:

> [P]robative value of any purported expert testimony Corporal Abbott might offer is substantially outweighed by the danger of unfair prejudice particulary because: (1) Corporal Abbott is not an accident reconstruction officer; (2) neither he nor any other officer performed an accident reconstruction in this case; and (3) a jury may give his opinions, which are not based on any expertise in accident reconstruction, improper and undue weight because he is a trooper.

(*Id.* at 5).

In response, Mr. Surman asserts that Corporal Abbott's "testimony is admissible under Rules 401 and 701." (ECF No. 77 at 2). Mr. Surman first contends that in another case, this Court "allowed the testimony of the State Trooper who arrived on scene after the crash, investigated the crash, and authored the report based on his observations." (*Id.*) (citing *Prescott*, 2015 WL 12564232). Second, Mr. Surman notes that Corporal Abbott testified that at the time of the accident on October 23, 2017, he "had been a police officer for 22 years," he had "investigated multiple crashes," and he is "able to determine how a crash occurs through statements and physical evidence." (*Id.* at 3). Third, Mr. Surman distinguishes the cases that Mr. Payne and DOT cite from this case by arguing that in this case, Mr. Payne's guilty plea to one of Corporal Abbott's citations "'fills in the gaps' as to anything Corporal Abbott may not have witnessed." (*Id.* at 3–4). Finally, Mr. Surman contends that Corporal Abbott should be permitted to testify as to the facts that went into his decision to cite Mr. Payne for the violation to which he pleaded guilty, as well as Mr. Payne's responsibilities on the road on the day of the accident and what type of conduct the state police seek to deter as violations of the law. (*Id.* at 4–5). In sum, Mr. Surman argues that Corporal

Abbott "should be allowed to testify to his observations of evidence, the statements, his understanding of the law, and any other relevant observations regarding the accident or conduct of the parties and be allowed to refer to the citation and conviction." (*Id.* at 5).

### 2. Legal Standard

Federal Rule of Evidence 701 provides that:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> > (a) rationally based on the witness's perception;
> > (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> > (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

With respect to the first requirement, a "lay opinion must be rationally based on the witness's perception and 'firsthand knowledge of the factual predicates that form the basis for the opinion.'" *Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 225 (3d Cir. 2008) (quoting *Gov't of V.I. v. Knight*, 989 F.2d 619, 629 (3d Cir. 1993)).

With respect to the second requirement, "lay opinion testimony must be 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'" *Id.* at 226 (quoting FED. R. EVID. 701(b)). As the "Sixth Circuit has recognized, 'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" *Id.* (quoting *Mitroff v. Xomax Corp.*, 797 F.2d 271, 276 (6th Cir. 1986)).

Finally, under Rule 701(c), "admissible lay opinion testimony must 'not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702.'" *Id.* at 227 (quoting FED. R. EVID. 701(c)). This provision:

> [W]as added to "eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing" and to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed. R. Civ. P. 26 and Fed. R. Crim. P. 16 by simply calling an expert witness in the guide of a layperson."

*Id.* (quoting FED. R. EVID. 701 advisory committee's note).

With respect to Rule 701 as a whole, the Third Circuit has explained that the Rule "means that a witness is only permitted to give her opinion or interpretation of an event *when she has some personal knowledge of that incident.*" *United States v. Fulton*, 837 F.3d 281, 291 (3d Cir. 2016) (emphasis added). The "objective of such testimony is to put 'the trier of fact in possession of an accurate reproduction of the event.'" *Id.* (quoting *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)). But the Rule is "carefully designed to exclude lay opinion testimony that 'amounts to little more than choosing up sides, or that merely tells the jury what result to reach.'" *Id.* (quoting *United States v. Stadtmauer*, 620 F.3d 238, 262 (3d Cir. 2010)).

### 3. Analysis

It is clear that the Surmans only intend to elicit Rule 701 testimony from Corporal Abbott at trial. Indeed, Mr. Surman offers no argument, in his Response to Mr. Payne and DOT's Motion, that Corporal Abbott's testimony is admissible under Rule 702. (ECF No. 77). Likewise, the Surmans' Pretrial Statements offer no indication that the Surmans intend to elicit expert testimony from Corporal Abbott at trial under Rule 702. (ECF Nos. 53, 55, 56).

Accordingly, the Court must evaluate whether Corporal Abbott may testify to the following under Rule 701: (1) fault and causation of the accident and (2) his "observations of evidence [at the scene of the accident], the statements [of those that witnessed the accident], his understanding of the law, and any other relevant observations regarding the accident or conduct of the parties and be allowed to refer to the citation and conviction." (ECF Nos. 71, 77).[12]

Under Rule 701, the Court finds that Corporal Abbott may testify to matters about which he has personal knowledge, such as: (1) the evidence he personally observed at the scene of the accident, (2) his investigation of the accident, (3) the statements of those that witnessed the accident and spoke to Corporal Abbott about what they saw,[13] and (4) the Section 3309(1) citation[14]

---

[12] To the extent that the parties dispute whether Corporal Abbott may testify to other matters, such as the type of conduct that the state police seek to deter, (ECF No. 77 at 5), the Court defers ruling on those categories of testimony until the Court hears the specific questions, as well as the context in which they are asked, at trial. However, because Corporal Abbott is only being offered to provide lay testimony under Rule 701, the Court stresses that all testimony he gives must comply with that Rule.

[13] Of course, any such statement must be admissible under the Rules governing hearsay.

[14] In permitting Corporal Abbott to testify regarding these matters, the Court makes four notes. First, the Court reiterates that it has found that Mr. Payne's guilty plea to the Section 3309(1) citation is admissible at trial as an admission of a party opponent. *See supra* Section III.A. Second, as the Court noted earlier, *see supra* Section III.B, the traffic citation itself is part and parcel with the guilty plea. Third, the conclusions in Corporal Abbott's Report (with the exception of the two citations to which Mr. Payne did not plead guilty) are admissible at trial because they are included in a public record. *See supra* Section III.B. Finally, the Surmans have not indicated an intention to elicit Rule 702 testimony from Corporal Abbott at trial.

These four findings are important because they explain the distinction between the matters to which Corporal Abbott may testify at trial and the matters to which he may not testify. Indeed, as the Court explains below, Rule 701 does not permit Corporal Abbott to testify *broadly* regarding fault and causation of the accident. However, Corporal Abbott may testify to matters that implicate fault and causation and about which he has personal knowledge, such as the findings in his Report and the Section 3309(1) citation, *because those items are already admissible independent of Rule 702*, and because Corporal Abbott was the individual who prepared those items.

Therefore, the Court will bar Corporal Abbott from making sweeping generalizations about who caused the accident on October 23, 2017. But the Court will permit Corporal Abbott to relay the assertions in his

because such testimony satisfies the requirements of that Rule. *Hirst*, 544 F.3d at 225; *Prescott*, WL 12564232, at *3 ("Troopers Magnuson and Reifer both investigated the scene after the accident. Both troopers can testify as to their personal observations at the scene."); *Botey v. Green*, No. 3:12-CV-1520, 2017 WL 2535852, at *3 (M.D. Pa. June 8, 2017) ("To the extent that [the trooper] is offered only as a lay witness, he may testify about what he saw on the day of the accident, the full scope of his investigation, and provide appropriate lay witness opinions which are rationally based on his perception and personal knowledge of the accident.").

Turning to Corporal Abbott's understanding of the law, the Court will permit him latitude to testify to his own knowledge of the law insofar as it impacted his decision to cite Mr. Payne for violating Section 3309(1) because the Court finds that such testimony complies with the requirements of Rule 701. *Wilburn v. Maritrans GP Inc.*, 139 F.3d 350, 356 (3d Cir. 1998) ("[A] lay witness with first hand knowledge can offer an opinion akin to expert testimony in most cases, so long as the trial judge determines that the witness possesses sufficient and relevant specialized knowledge or experience to offer the opinion.") (internal quotation marks and citation omitted); *see also Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81 (3d Cir. 2009) ("When a lay witness has particularized knowledge by virtue of [his] experience, [he] may testify—even if the subject matter is specialized or technical—because the testimony is based upon the layperson's personal knowledge rather than on specialized knowledge within the scope of Rule 702."). However, the Court will not permit Corporal Abbott to offer broad generalizations regarding Mr. Payne's duties under the law, as the Court finds that such broad generalizations would not be helpful to

---

Report, the citation to which Mr. Payne pleaded guilty, and the facts that Corporal Abbott found in the course of his investigation that led him to write the Report and cite Mr. Payne for violating Section 3309(1).

the jury. *Hirst*, 544 F.3d at 226. Indeed, the Court will give all appropriate instructions to the jury regarding Mr. Payne's responsibilities under the law at the conclusion of trial.

Finally, turning to fault and causation, Corporal Abbott testified that he did not witness the accident on October 23, 2017. (ECF No. 49 at 7). Further, his Report regarding the accident was based on items such as the physical evidence from the crash, his interviews with Mr. Payne and Mr. Surman, and his interview with an independent witness. (ECF No. 73-1 at 6). Therefore, because any *broad* opinion testimony offered by Corporal Abbott regarding fault or the cause of the accident would largely be based on items *other than* his "perception and firsthand knowledge of the factual predicates that" would form the basis for his opinion, the Court holds that he may not testify *broadly* as to fault or causation of the accident at trial. *Hirst*, 544 F.3d at 225 ("[A] lay opinion must be rationally based on the witness's perception and firsthand knowledge of the factual predicates that form the basis for the opinion.") (internal quotation marks and citation omitted); *see also Duhon v. Marceaux*, 33 F. App'x 703, 703 (5th Cir. 2002) ("As a general rule, police officers' lay opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene are excluded under Rule 701.") (internal quotation marks and citation omitted); *Botey*, 2017 WL 2535852, at *3 ("However, should [the trooper] not be offered as an expert witness, he may be precluded from offering testimony as to his conclusions regarding fault of the parties due to the lack of proper expert qualifications to offer such an opinion as well as the risk that such testimony would 'amount[] to little more than choosing up sides' or 'merely tell[] the jury what result to reach.'") (quoting *Fulton*, 837 F.3d at 291).[15]

---

[15] Because fault and causation of the accident constitute the ultimate issues in this case, and because Mr. Surman has offered the Court no indication that this is an exceptional case where the Court should permit Rule 701 testimony by Corporal Abbott on the ultimate issues, (ECF No. 77), the Court also finds that it is

In sum, the Court will not permit Corporal Abbott to testify *broadly* at trial regarding fault or causation of the accident. However, the Court will permit Corporal Abbott to testify to matters about which he has personal knowledge, such as: (1) the evidence he personally observed at the scene of the accident, (2) his investigation of the accident, (3) the statements of those that witnessed the accident and spoke to him, (4) the Section 3309(1) citation, and (5) Corporal Abbott's understanding of the law insofar as it relates to that citation. Accordingly, the Court grants in part and denies in part the Motion at ECF No. 71.

If a party believes that Corporal Abbott's testimony at trial is in violation of the foregoing, or if his testimony pertains to some area that the Court has not addressed in this Memorandum Opinion and that a party believes is outside the ambit of Rule 701, that party may lodge an appropriate objection during trial.

To summarize the Court's disposition of the three foregoing motions, the Court permits the Surmans to introduce evidence of Mr. Payne's guilty plea to Section 3309(1) citation (and that citation itself) at trial. With respect to the Report, the Court bars the Surmans from introducing: (1) any reference to Defendants' liability insurance and (2) any reference to the two citations to which Mr. Payne did not plead guilty, but the Court permits the Surmans to introduce the rest of the Report. Finally, with respect to Corporal Abbott's testimony at trial, the Court will not permit Corporal Abbott to testify *broadly* regarding fault or causation of the accident. However, the Court

---

appropriate to bar Corporal Abbott from testifying *broadly* to those issues because such testimony would not comply with Rule 701(b). *Hirst*, 544 F.3d at 226 ("As the Sixth Circuit has recognized, 'seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'") (quoting *Mitroff*, 797 F.2d at 276)).

will permit Corporal Abbott to testify to matters about which he has personal knowledge, such as: (1) the evidence he personally observed at the scene of the accident, (2) his investigation of the accident, (3) the statements of those that witnessed the accident and spoke to him about what they saw, (4) the Section 3309(1) citation, and (5) Corporal Abbott's understanding of the law insofar as it relates to that citation.

## IV. The Court Denies Mr. Surman's "Motion to Exclude the Report and Testimony of Reconstruction Expert Daniel Connolly" (ECF No. 65)

In his Motion at ECF No. 65, Mr. Surman asks the Court to bar Daniel Connolly's ("Mr. Connolly") expert report and testimony from being introduced at trial. For the following reasons, the Court denies this Motion.

### A. The Contents of Mr. Connolly's Report

Mr. Connolly's report contains a total of thirteen pages. (ECF No. 65-1). On page one,[16] Mr. Connolly outlines the information that he reviewed in preparing his report. (*Id.* at 2). On pages two through four, Mr. Connolly outlines and quotes extensively from: (1) Corporal Abbott's Report, (2) Mr. Payne's recorded statement, (3) Mr. Payne's deposition testimony, (4) Mr. Surman's deposition testimony, (5) Mrs. Surman's deposition testimony, and (6) Matthew Micklic's (an individual who witnessed the accident) ("Mr. Micklic") deposition transcript. (*Id.* at 3–5).

On pages five and six, Mr. Connolly provides photographs of the "video … from the drive-cam from the Volvo tractor" that Mr. Payne was driving at the time of the accident. (*Id.* at

---

[16] In referencing these page numbers, the Court is referring to the number in the upper left-hand corner of the report (*i.e.*, Page 2 of 12).

6–7). Further, Mr. Connolly provides commentary regarding what the viewer sees in the video—for example, "[a]s the video continues, the Volvo travels approximately 90 feet and starts to merge left. **Exhibit 2** shows the front left mirror shows a clear left lane." (*Id.* at 6) (emphasis in original).

At the top of page seven,[17] Mr. Connolly states that there was "disputed testimony between the parties as to who hit who. Mr. Payne stated in his recorded statement and his deposition that he was impacted by the mini-van on the left trailer tandems. Mr. Surman testified that they were struck by the side of the trailer." (*Id.* at 8).

Moving from the middle of page seven through page ten, Mr. Connolly offers photographs and explains how those photographs inform his opinions, such as his assertion that the "physical evidence confirms that the initial contact to the trailer was made by the Dodge Caravan and not the result of a side-swipe." (*Id.* at 8–11).

On page eleven, Mr. Connolly offers the following six conclusions:

[1.] [Mr.] Payne was traveling eastbound in the right lane of Interstate 70 approaching a construction zone. Due to heavy traffic, he was having difficulties merging into the left open lane. As Mr. Payne approached the merge point, he saw an opportunity to merge after look[ing] into his left mirrors.

[2.] [Mr.] Payne in a Recorded Statement and Deposition testimony stated he had approximately 10 feet of clearance to merge. He stated that when he was approximately half way into the left lane, he observed the Dodge Caravan start to speed up and impact into his left rear tandems.

[3.] [Mr.] Surman was operating a Dodge Caravan. Due to the construction zone, he had merged into the left lane. Based on his Deposition testimony, he was focused forward when the tractor trailer zoomed past him in the right lane and while merging left, struck the right side of his Dodge just behind the tractor, pushing him into the left Jersey barrier.

---

[17] The Court notes that there are two pages labeled page six in the report. (ECF No. 65-1). The Court therefore construes the first of these two pages as page six and the second of these two pages as page seven.

[4.] Based on the physical evidence of both the trailer wheels and right side of the Dodge, the evidence aligns with the version of Mr. Payne.

[5.] Due to the lack of damage to the rear of the Dodge, it is clear that impact did not happen just behind the tractor as described by Mr. Surman and Mr. Miklic. If impact occurred in that area of combination, I would expect to see damage to the rear right corner of the Dodge from contact with the left rear bottom corner of the frame rail and ICC bumper.

[6.] In the deposition testimony of Nicholina Surman, she testified, "And when he hit us, I went forward and then back." If they were hit on the side, her movement would be toward the principal direction of force. That force would have originated from the right and she would have moved toward the right. Her testimony that she initially went forward aligns with the version of Mr. Payne.

(*Id.* at 12).

Also on page eleven, Mr. Connolly offered the following opinion:

Based on the physical evidence observed on both the trailer and Dodge Caravan, it confirms that the Dodge impacted the left rear corner of the trailer and left rear tandem as it was merging. The testimony of Mrs. Surman about her movement inside the Dodge, also confirms the front to rear impact. The damage is not consistent with a side swipe crash as [t]estified to by the [Surmans].

(*Id.*).

Finally, on page twelve, Mr. Connolly indicated that he reached the above conclusions "within a reasonable degree of scientific certainty[]" and stated that he did so using "methodologies which are reviewed and accepted within the collision investigation industry and based on [his] education, training and experience as a crash investigator since 1993 and an accredited Crash Reconstructionist since 1996." (*Id.* at 13).

### B.     The Parties' Arguments

Mr. Surman asks the Court to bar the "report, conclusions and testimony of [Mr. Connolly] … from being presented at trial." (ECF No. 66 at 5). Specifically, Mr. Surman argues

that with respect to Mr. Connolly's first, second, third, and sixth conclusions on page eleven of his report, he has simply summarized the testimony and indicated what testimony the jury should believe. (*Id.* at 4). Mr. Surman contends that the "jury should be permitted to assess the testimony and credibility of the parties, and this requires no specialized training or expert analysis." (*Id.*). Further, Mr. Surman asserts that conclusions four and five "purport to be based on physical evidence, but they are just a discussion of where on the vehicles the damage is, in the photos. Again, the jury can view the photos themselves." (*Id.*). Finally, Mr. Surman argues that the Court should bar Mr. Connolly's review of the drive-cam video because Mr. Connolly does not base any of his conclusions on the video, and because the jury should be permitted to view the video and draw its own conclusions. (*Id.* at 4–5).

In response, Mr. Payne and DOT argue that Mr. Connolly's report and testimony meet the three requirements of Rule 702 and are therefore admissible at trial. (ECF No. 86).

C.    **Legal Standard**

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that 'any and all expert testimony or evidence is not only relevant, but also reliable.'" *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008) (quoting *Kannakeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997)). Therefore, "when a party seeks to admit expert testimony, the Court must make a preliminary determination that the requirements of Federal Rule of Evidence 702 have been met." *Abed-Rabuh v. Hoobrajh*, No. 3:17-CV-15, 2019 WL 2298711, at *3 (W.D. Pa. May 30, 2019) (citing *Magistrini v. One Hour Martinizing Dry Cleaning*, 68 F. App'x 356, 356 (3d Cir. 2003)).

Under Federal Rule of Evidence 702:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702; *see also United States v. Walker*, 657 F.3d 160, 175 (3d Cir. 2011).

Rule 702 "'has three major requirements: (1) the proffered witness must be an expert, *i.e.*, must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [*i.e.*, reliability]; and (3) the expert's testimony must assist the trier of fact [*i.e.*, fit].'" *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (quoting *Pineda*, 520 F.3d at 244).

The qualification prong "requires 'that the witness possess specialized expertise.'" *Pineda*, 520 F.3d at 244 (quoting *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003)). The Third Circuit has "interpreted Rule 702's qualification requirement liberally … [it] has held that a broad range of knowledge, skills, and training qualify an expert." *Id.* (internal quotation marks and citation omitted).

Turning to the reliability prong, the Third Circuit has identified several factors for courts to consider:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

*Elcock v. Kmart Corp.*, 233 F.3d 734, 745–46 (3d Cir. 2000).

This list is "non-exclusive and … each factor need not be applied in every case." *Id.* at 746. Indeed, the "reliability inquiry is flexible, and the relevance of each factor depends on the nature of the issues and the subject of the testimony." *Abed-Rabuh*, 2019 WL 2298711, *4 (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 150 (1999)). In certain cases, the "relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co., Ltd.*, 526 U.S. at 150.

> In short:

> The test of admissibility is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research. Rather, the test is whether the particular opinion is based on valid reasoning and reliable methodology. The admissibility inquiry thus focuses on principles and methodology, not on the conclusions generated by the principles and methodology. The goal is reliability, not certainty. Once admissibility has been determined, then it is for the trier of fact to determine the credibility of the expert witness.

*In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999) (internal quotation marks and citations omitted).

Finally, turning to the "fit" prong, the "Rule 702 inquiry 'requires that the expert testimony 'fit' by assisting the trier of fact.'" *Galentine v. Estate of Stekervetz*, 273 F. Supp. 2d 528, 542 (D. Del. 2003) (quoting *ID Sec. Sys. Can., Inc. v. Checkpoint Sys., Inc.*, 198 F. Supp. 2d 598, 602–03 (E.D. Pa. 2002)). Admissibility "thus depends in part upon 'the proffered connection between the scientific research or test result to be presented and particular disputed factual issues in the case.'" *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 (3d Cir. 2000) (quoting *In re Paoli Railroad Yard PCB Litig.*, 35 F.3d 717, 743 (3d Cir. 1994)). However, "this standard does not require that the plaintiff prove that the opinions of their experts are correct, rather they only have to demonstrate that they are reliable." *Galentine*, 273 F. Supp. 2d at 542–43 (citing *Oddi*, 234 F.3d at 145). Finally,

"'expert testimony based on assumptions lacking factual foundation in the record is properly excluded under the fit requirement.'" *Abed-Rabuh*, 2019 WL 2298711, at * 4 (quoting *Meadows v. Anchor Longwall & Rebuild, Inc.*, 306 F. App'x 781, 790 (3d Cir. 2009)).

### D.      Analysis

The Court finds that Mr. Connolly's report (and testimony to the same or similar effect) satisfy the requirements of Rule 702, for reasons that the Court now explains.

Turning first to Mr. Connolly's qualifications, the Court notes that Mr. Surman only offers the conclusory assertion that Mr. Connolly "is not qualified to be a reconstruction expert in this matter and his report should be excluded from evidence at the time of trial." (ECF No. 65 at 2). Further, Mr. Connolly's curriculum vitae indicates that he has significant experience working, teaching, researching, training, consulting, and testifying as an expert witness regarding accident reconstruction and related fields. (ECF No. 54-1 at 13–24). Indeed, at the time that Mr. Connolly authored his report in this case, he had been a crash investigator for approximately twenty-seven years and an accredited Crash Reconstructionist for approximately twenty-four years. (*Id.* at 1, 12). Therefore, like another Court in this district, this Court finds that Mr. Payne and DOT "have met their burden to show that [Mr.] Connolly is qualified in accident reconstruction by his 'specialized expertise.'" *Repa v. Napierkowski*, No. 1:19-CV-101-RAL, 2022 WL 1522360, at *2 (W.D. Pa. May 13, 2022) ("For about twelve years as a policeman, [Mr. Connolly] investigated numerous kinds of vehicle accidents, performed accident reconstruction, and supervised others in that work. Since then, he has consulted in accident reconstruction for nearly thirteen years, trained others in accident reconstruction, and received relevant trainings and certifications.") (quoting *Pineda*, 520 F.3d at 244).

Turning to the reliability prong, the Court finds that Mr. Connolly's report (and testimony to the same or similar effect at trial) is based on valid reasoning and reliable methodology because Mr. Connolly: (1) consulted reliable evidence regarding the damage to the two vehicles in the accident and closely related matters (such as pictures, Corporal Abbott's Report, and Mrs. Surman's deposition testimony), (2) coupled that evidence with his extensive experience, expertise, and training in the field of accident reconstruction, and then (3) reached conclusions that can be examined and tested by others regarding which part of Mr. Payne's vehicle collided with which part of Mr. Surman's vehicle, as well as closely related matters. *Repa*, 2022 WL 1522360, *5 ("[Mr.] Connolly may also testify to his opinion in bullet point eleven that the intersection where the accident occurred has 'adequate size to handle a turning 57-foot tractor trailer combination' … His experience in accident reconstruction qualifies him to draw this conclusion."). Therefore, the Court finds that Mr. Connolly's report, as well as his testimony to the same or similar effect at trial, satisfy the reliability requirement of Rule 702.

Finally, turning to fit, the Court notes that Mr. Payne and DOT allege that "Mr. Surman sped up in an attempt to pass" Mr. Payne at the time of the accident. (ECF No. 54 at 2). Further, the Court reiterates that Mr. Connolly's conclusion in his report is that "the Dodge (driven by Mr. Surman) impacted the left rear corner of the trailer and left rear tandem (of Mr. Payne's tractor-trailer) as it was merging … The damage is not consistent with a side swipe crash[.]" (ECF No. 65-1 at 12). Therefore, Mr. Connolly's report and testimony go directly to whether Mr. Surman sped up at the time of the accident (and thereby made contact with the rear end of Mr. Payne's vehicle rather than the side), which relates directly to Mr. Payne and DOT's claim that Mr. Surman was negligent and a cause (or the cause) of the accident. (*See* ECF No. 49). Accordingly,

given the close connection between the testimony to be offered and the particular factual disputes of this case, *see Oddi*, 234 F.3d at 145, the Court finds that the third prong of Rule 702 is likewise satisfied with respect to Mr. Connolly's report and related testimony.

In closing, the Court briefly addresses Mr. Surman's arguments that: (1) certain of Mr. Connolly's conclusions constitute him simply reiterating evidence that the jury can view and assess for itself and (2) Mr. Connolly engages in improper credibility determinations in the course of his report. (ECF No. 66 at 4–5).

With respect to Mr. Connolly reiterating evidence in the course of his report, Federal Rule of Evidence 703 provides that an expert:

> [M]ay base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

FED. R. EVID. 703. Having reviewed Mr. Connolly's report, the Court finds that when he outlines deposition testimony and other evidence, he is simply explaining the evidentiary bases for his opinions. Further, the Court notes that Rule 703 provides that if the "facts or data [upon which an expert relies in formulating an opinion] would otherwise be inadmissible, the proponent of the opinion may disclose [the facts or data] to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.* However, Mr. Surman has offered no argument that any of the evidence relied upon by Mr. Connolly is inadmissible at trial. (ECF Nos. 65, 66). Therefore, the Court finds that this argument by Mr. Surman does not warrant the exclusion of portions of Mr. Connolly's report.

Finally, with respect to Mr. Surman's argument that portions of Mr. Connolly's report constitute credibility determinations, while Mr. Connolly does make statements such as "the physical evidence of both the trailer wheels and right side of the Dodge ... aligns with the version of Mr. Payne[,]" (ECF No. 65-1 at 12), the Court finds that those statements primarily constitute Mr. Connolly offering his opinion regarding what happened at the moment of the accident, not simple credibility determinations by Mr. Connolly that Mr. Payne told the truth and Mr. Surman did not. *Ralston v. Garabedian*, No. 19-CV-1539, 2022 WL 19273, at *13 (E.D. Pa. Jan. 3, 2022) (explaining that "'expert testimony which does *nothing* but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations[.]'") (quoting *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001)).

Accordingly, the Court will admit Mr. Connolly's report (and testimony to the same or similar effect) at trial, and the Court will deny Mr. Surman's Motion at ECF No. 65.

If Mr. Surman believes that Mr. Connolly begins to offer testimony at trial that *solely* constitutes a credibility determination, he may lodge an appropriate objection at that time. *Coney v. NPR, Inc.*, 312 F. App'x 469, 474 (3d Cir. 2009) (citing *Adams*, 271 F.3d at 1245) ("[T]he credibility of witnesses is generally not an appropriate subject for expert testimony.") (internal quotation marks and citations omitted).

## V.     The Court Conditionally Denies Mrs. Surman's "Motion in Limine to Preclude Defendants, [Mr.] Payne and [DOT] From Introducing a Video at the Time of Trial" (ECF No. 95)

In Mr. Payne and DOT's "Supplemental Pretrial Statement[,]" (ECF No. 92), which they filed on August 4, 2022, they indicated the following: "Defendants have video that they may introduce at the time of trial for impeachment purposes only. Because the video is solely for

impeachment, it has not previously been disclosed." (*Id.* at 1). It is this video that is the subject of Mrs. Surman's Motion at ECF No. 95.

### A.     The Parties' Arguments

In Mrs. Surman's Motion, she requests that the Court bar Mr. Payne and DOT "from introducing into evidence the 'video' referenced in their Supplemental Pretrial Statement filed with the Court on August 4, 2022." (ECF No. 95 at 5). Mrs. Surman contends that Mr. Payne and DOT have an obligation under Federal Rule of Civil Procedure 26 to "disclose documents and other evidence and to timely supplement their disclosure[s] if new evidence becomes available[,]" and that because Mr. Payne and DOT did not provide the video to Mrs. Surman by the close of discovery in December 2020, the introduction of the video at trial "may severely prejudice" Mrs. Surman. (ECF No. 100 at 2–3). Relatedly, Mrs. Surman notes that Rule 26 excludes from discovery evidence used solely for impeachment. (*Id.* at 3). However, Mrs. Surman states that there is a "large body of case law that interprets both the definition of 'solely for impeachment' and how to handle the evidence that the party is seeking not to produce." (*Id.*). After outlining that caselaw, Mrs. Surman reiterates that she is "prejudiced by going into trial blind. F.R.C.P. 26 and the discovery rules were fashioned to prevent this. The only way to cure this is for [D]efendants to be precluded from introducing the video at the time of trial." (*Id.* at 9).

In response, Mr. Payne and DOT argue that the Federal Rule of Civil Procedure governing initial disclosures, the Federal Rule of Civil Procedure governing pretrial disclosures, and this Court's Local Rules all exempt evidence to be used solely for impeachment from the automatic disclosure requirement. (ECF No. 104 at 2–3). Indeed, after outlining caselaw discussing the meaning of evidence to be used "solely for impeachment," Mr. Payne and DOT assert that "based

on the plain language of both the Federal Rules and the Local Rules, and case law defining impeachment evidence, Defendants did not have a duty to disclose video they intend to introduce at trial, <u>if necessary</u>, for impeachment purposes. (*Id.* at 5) (emphasis in original). Finally, Mr. Payne and DOT contend that in light of the uncertainty surrounding the meaning of "solely for impeachment," even if this Court "were to disagree with the line of cases that provides such evidence does not need to be identified prior to its use, at trial, precluding Defendants [from] using the video, at trial, as a sanction, would be unjustifiably harsh and unwarranted." (*Id.* at 7).

Finally, in Mrs. Surman's Reply, she argues that the caselaw that Mr. Payne and DOT cite is distinguishable from this case. (*See* ECF No. 105). Further, she asserts that Mr. Payne and DOT not only want to show the video to Mrs. Surman for purposes of impeachment, but that they want to "show the video to [Mrs. Surman] and the jury simultaneously." (*Id.* at 2). In closing, Mrs. Surman again requests that the Court grant her motion in limine and preclude Mr. Payne and DOT from introducing the video at trial. (*Id.* at 5).

B.     **Legal Standard**

Federal Rule of Civil Procedure 26(a)(1)(A)(ii) provides the following regarding initial disclosures:

> **(A)** *In General.* Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties:
>
>> (ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, *unless the use would be solely for impeachment.*

FED. R. CIV. P. 26(a)(1)(A)(ii) (emphasis added). These disclosures are due "within 14 days after

the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or

unless a party objects during the conference that initial disclosures are not appropriate in this

action and states the objection in the proposed discovery plan." FED. R. CIV. P. 26(a)(1)(C).

With respect to pretrial disclosures, Rule 26(a)(3)(A)(iii) provides the following:

> **(A)** *In General.* In addition to the disclosures required by Rule 26(a)(1) and (2), a
> party must provide to the other parties and promptly file the following
> information about the evidence that it may present at trial *other than solely for
> impeachment*:
>
>> (iii) an identification of each document or other exhibit, including
>> summaries of other evidence—separately identifying those items the party
>> expects to offer and those it may offer if the need arises.

FED. R. CIV. P. 26(a)(3)(A)(iii) (emphasis added). Unless the "court orders otherwise, these

disclosures must be made at least 30 days before trial." FED. R. CIV. P. 26(3)(B).

As the foregoing rules make clear, information "used solely for impeachment need not be

disclosed pursuant to Rule 26(a)(1)(A), (C)" or Rule 26(a)(3)(A), (B). *Mulero v. Walsh*, No. 3:15-CV-

1406, 2018 WL 1084235, at *7 (M.D. Pa. Feb. 28, 2018); *see also Standley v. Edmonds-Leach*, 783 F.3d

1276, 1282 (D.C. Cir. 2015) (holding that testimony that Defendants did not disclose in "their

pretrial disclosures or discovery responses" was admissible at trial only if it was "subject to Rule

26(a)'s 'solely for impeachment' exception"); *Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 409

(M.D. Pa. 2019) ("[T]he … photograph need not have been disclosed if it was being offered by

counsel solely for impeachment purposes."); *Marinkovic v. Battaglia*, No. 1:14-CV-49, 2017 WL

6729756, at *2 (W.D. Pa. Oct. 20, 2017). While substantive evidence is "offered to establish the

truth of a matter to be determined by the trier of fact," *Standley*, 783 F.3d at 1282 (internal

quotation marks and citation omitted), impeachment "evidence is not offered to prove the truth of the matter asserted, but rather is offered to impugn the credibility of the person testifying." *Rosen v. Superintendent Mahoney SCI*, 972 F.3d 245, 259 (3d Cir. 2020).

But this exception for evidence used solely for impeachment begs the question—what does *solely* for impeachment mean? The Third Circuit has not spoken to this issue, and other Courts of Appeals are divided on it. Indeed, in "applying Rule 26(a)'s impeachment exception, some courts have concluded that the impeachment exception is limited to evidence that has no potential utility other than impeachment." *Standley*, 783 F.3d at 1283 (citing *Chiasson v. Zapata Gulf Marine Corp.*, 988 F.3d 513, 517–18 (5th Cir. 1993)). On the "other hand, the Seventh Circuit has … held that undisclosed evidence with both impeachment and substantive qualifies may be presented at trial so long as it is strictly used to impeach." *Id.* (citing *DeBiasio v. Ill. Cent. R.R.*, 52 F.3d 678, 686 (7th Cir. 1995)). However, under "either approach, the courts have focused on the word 'solely[,]'" and circuit courts have "read that term strictly." *Id.*

As the Court explains below, at this juncture in this case, the Court need not choose a side in this circuit split because the Court currently lacks access to the video and therefore cannot assess whether it has *any* substantive value. However, the Court outlines the law in this area because, after reviewing the video, it may have to choose which line of caselaw it finds more persuasive. Finally, in the event that the Court finds that Mr. Payne and DOT did have an obligation to disclose the video pursuant to Rule 26(a), the Court will need to decide whether to exclude the video pursuant to Rule 37(c)(1), the Rule to which the Court now turns.

Under Federal Rule of Civil Procedure 37(c)(1), if a "party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use the information

or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). Indeed, when a party fails to comply with Rule 26(a)'s disclosure requirements, the evidence that that party failed to disclose is inadmissible at trial unless the failure to disclose was substantially justified or harmless. *Standley*, 783 F.3d at 1282 ("The defendants concede that they did not identify Kellar as a witness in their pretrial disclosures or discovery responses, and they do not maintain on appeal that their failure to identify Kellar before trial was substantially justified or harmless. *See* FED. R. CIV. P. 37(c)1). Kellar's testimony, therefore, was admissible at trial only if it is subject to Rule 26(a)'s 'solely for impeachment' exception."); *Mulero*, 2018 WL 1084235, at *7–8 (finding that: (1) the video that was not disclosed within the timeframe set forth by Rule 26(a) was substantive and impeaching in nature and that (2) it was therefore subject to exclusion from trial unless the failure to disclose was substantially justified or harmless).

In determining whether to exclude evidence pursuant to Rule 37, courts in the Third Circuit consider the following four factors:

> (1) [T]he prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and (4) bad faith or willfulness in failing to comply with a court order of discovery obligation.

*Nicholas v. Penn. State Univ.*, 227 F.3d 133, 149 (3d Cir. 2000). A court "must also consider the importance of the evidence in question, which the Third Circuit has noted is 'often the most significant factor.'" *Mulero*, 2018 WL 1084235, at *8 (quoting *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 298 (3d Cir. 2012)).

C.      **Analysis**

Here, Mrs. Surman does not argue that Mr. Payne and DOT failed to produce the video in response to a discovery request, and she does not refer the Court to any particular Court order, Federal Rule of Civil Procedure, or Local Rule that she contends Mr. Payne and DOT violated in failing to disclose the video, other than Federal Rule of Civil Procedure 26.[18] (ECF Nos. 95, 100, 105). Therefore, the Court finds that if Mr. Payne and DOT were required to disclose the video to Mrs. Surman, that requirement would have had to come from Federal Rule of Civil Procedure 26(a).

As the Court explained above, Rule 26(a) does not require parties to disclose evidence that is to be used solely for impeachment. *Mulero*, 2018 WL 1084235, at *7. In this case, the Court cannot conclusively rule on Mrs. Surman's Motion at ECF No. 95 because the Court does not have access to the video and accordingly cannot review it to decide whether it constitutes evidence that Mr. Payne and DOT would be using at trial "solely for impeachment." Therefore, the Court will require Mr. Payne and DOT to provide the video to the Court on or before April 7, 2023, for an in-camera review. In the interim, the Court will temporarily accept Mr. Payne and DOT's assertion that the video "is solely for impeachment" (ECF No. 92 at 1) and conditionally deny the Motion at ECF No. 95 on that basis.

In conducting the in-camera review of the video, the Court notes that it has two options in terms of how it proceeds. First, in accordance with Rule 26(a) and the decisions of the District of Columbia Circuit, the First Circuit, the Fifth Circuit, and the Seventh Circuit, if the Court finds that the video has "no potential utility other than impeachment[,]" the Court will permit Mr.

---

[18] The only specific portion of Rule 26 to which Mrs. Surman refers is Rule 26(a). (ECF Nos. 95, 100, 105).

Payne and DOT to use the video for impeachment at trial without disclosing it to Mrs. Surman. *Standley*, 783 F.3d at 1283.[19] Second, if the Court finds that the video has a substantive quality, the Court will address the circuit split referenced above (to the extent necessary) and all other relevant legal principles, and, if the Court finds that Mr. Payne and DOT were required to disclose the video pursuant to Rule 26(a), the Court will apply the four factors set forth by the Third Circuit in weighing whether to exclude the video as a sanction for Mr. Payne and DOT's failure to disclose the video pursuant to Rule 26(a).[20]

## VI.    Conclusion

For the foregoing reasons, the Court:

1. **GRANTS** Mr. Surman's "Motion to Allow [Mr.] Payne's Motor Vehicle Conviction as Evidence" (ECF No. 60);

2. **DENIES** Mr. Surman's "Motion to Exclude the Report and Testimony of Reconstruction Expert Daniel Connolly" (ECF No. 65);

3. **GRANTS** Mr. Surman's "Motion in Limine to Exclude Reference to [Mr.] Surman's Liability Insurance" (ECF No. 67);

---

[19] After the in-camera review, the Court will also further explore the issue of whether it is appropriate to permit Mr. Payne and Dot to show the video to the jury, as opposed to simply showing it to Mrs. Surman.

[20] In closing, the Court briefly explains why the cases Mrs. Surman cites in her Brief at ECF No. 100 are distinguishable from this case, at least at this juncture. First, in *McDevitt v. Verizon Services Corp.*, No. 14-CV-4125, 2016 WL 1072903, at *3 (E.D. Pa. Feb. 22, 2016), the Court was considering whether to exclude a surveillance video that Defendant withheld from Plaintiff *even though Plaintiff sought that video in his requests for production of documents. Id.* at *3. Second, in *Gibson by Gibson v. Nat'l R.R. Passenger Corp.*, 170 F.R.D. 408 (E.D. Pa. 1997), the Court likewise dealt with the issue of whether a party had to disclose surveillance videos or photographs in response to a request for production. *Id.* at 409–11. Finally, as the Court noted earlier, in *Mulero*, the Court excluded surveillance video that was "both substantive and impeaching in nature" where the Rule 37(c)(1) factors weighed in favor of exclusion. 2018 WL 1084235, at *7–9.

4.   **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony of [Mrs. Surman's] Medical Bills at Trial" (ECF No. 69);

5.   **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony Related to the Repair Estimate/Bill for Damages to [the Surmans's] Vehicle at Trial" (ECF No. 70);

6.   **GRANTS IN PART** and **DENIES IN PART** Mr. Payne and DOT's "Motion … to Preclude Purported Expert Testimony of Corporal Scott Ryan Abbott" (ECF No. 71);

7.   **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence From and/or Testimony Related to the PIP File From Liberty Mutual Insurance" (ECF No. 72);

8.   **GRANTS IN PART** and **DENIES IN PART** Mr. Payne and DOT's "Motion … to Preclude Inadmissible Portions of the Police Accident Report" (ECF No. 73); and

9.   **CONDITIONALLY DENIES** Mrs. Surman's "Motion in Limine to Preclude … [Mr.] Payne and DOT Transportation, Inc. From Introducing a Video at the Time of Trial" (ECF No. 95).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

NICHOLINA SURMAN, and          )
STEPHEN SURMAN, H/W,           )        CIVIL ACTION NO. 3:19-216
                               )
            Plaintiffs,        )
                               )        JUDGE KIM R. GIBSON
      v.                       )
                               )
ROBERT PAYNE, and              )
DOT TRANSPORTATION, INC.,      )
                               )
      Defendants/Third-Party   )
      Plaintiffs,              )
                               )
      v.                       )
                               )
STEPHEN SURMAN,                )
                               )
      Third-Party Defendant.   )

**ORDER**

AND NOW, this _30th_ day of March, 2023, upon consideration of the following Motions:

1. Mr. Surman's "Motion to Allow [Mr.] Payne's Motor Vehicle Conviction as Evidence" (ECF No. 60);

2. Mr. Surman's "Motion to Exclude the Report and Testimony of Reconstruction Expert Daniel Connolly" (ECF No. 65);

3. Mr. Surman's "Motion in Limine to Exclude Reference to [Mr.] Surman's Liability Insurance" (ECF No. 67);

4. Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony of [Mrs. Surman's] Medical Bills at Trial" (ECF No. 69);

-1-

5.   Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony Related to the Repair Estimate/Bill for Damages to [the Surmans's] Vehicle at Trial" (ECF No. 70);

6.   Mr. Payne and DOT's "Motion … to Preclude Purported Expert Testimony of Corporal Scott Ryan Abbott" (ECF No. 71);

7.   Mr. Payne and DOT's "Motion … to Preclude Evidence From and/or Testimony Related to the PIP File From Liberty Mutual Insurance" (ECF No. 72);

8.   Mr. Payne and DOT's "Motion … to Preclude Inadmissible Portions of the Police Accident Report" (ECF No. 73); and

9.   Mrs. Surman's "Motion in Limine to Preclude … [Mr.] Payne and DOT Transportation, Inc. From Introducing a Video at the Time of Trial" (ECF No. 95);

and for the reasons set forth in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that the Court:

1.   **GRANTS** Mr. Surman's "Motion to Allow [Mr.] Payne's Motor Vehicle Conviction as Evidence" (ECF No. 60);

2.   **DENIES** Mr. Surman's "Motion to Exclude the Report and Testimony of Reconstruction Expert Daniel Connolly" (ECF No. 65);

3.   **GRANTS** Mr. Surman's "Motion in Limine to Exclude Reference to [Mr.] Surman's Liability Insurance" (ECF No. 67);

4.   **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony of [Mrs. Surman's] Medical Bills at Trial" (ECF No. 69);

5.  **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence and/or Testimony Related to the Repair Estimate/Bill for Damages to [the Surmans's] Vehicle at Trial" (ECF No. 70);

6.  **GRANTS IN PART** and **DENIES IN PART** Mr. Payne and DOT's "Motion … to Preclude Purported Expert Testimony of Corporal Scott Ryan Abbott" (ECF No. 71);

7.  **GRANTS** Mr. Payne and DOT's "Motion … to Preclude Evidence From and/or Testimony Related to the PIP File From Liberty Mutual Insurance" (ECF No. 72);

8.  **GRANTS IN PART** and **DENIES IN PART** Mr. Payne and DOT's "Motion … to Preclude Inadmissible Portions of the Police Accident Report" (ECF No. 73); and

9.  **CONDITIONALLY DENIES** Mrs. Surman's "Motion in Limine to Preclude … [Mr.] Payne and DOT Transportation, Inc. From Introducing a Video at the Time of Trial" (ECF No. 95).

**IT IS FURTHER ORDERED** that, on or before **April 7, 2023,** Mr. Payne and DOT shall provide the video that is the subject of the Motion at ECF No. 95 to the Court for an in-camera review.

**BY THE COURT:**

**KIM R. GIBSON
UNITED STATES DISTRICT JUDGE**